# 𝔖taunton

## CHARLES M. HARRELL v. CITY OF NORFOLK.

September 9, 1942.

Record No. 2565.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Breeden & Hoffman*, for the plaintiff in error.

*Jonathan W. Old, Jr., Donald W. Shriver* and *M. T. Bohannon*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

The plaintiff in error, Charles M. Harrell, was tried and convicted upon a warrant charging a violation of an ordinance of the city of Norfolk, relating to the operation of an automobile while under influence of intoxicants. The trial court entered a final judgment on the jury's verdict adjudging that the defendant pay a fine and the costs of his prosecution.

The ordinance in force and effect at the time of the commission of the alleged offense, reads as follows:

"Section 1: It shall be unlawful for any person to drive any motor vehicle, engine or train in the City of Norfolk while under the influence of alcohol, brandy, rum, whiskey, gin, wine, beer, lager beer, ale, porter, stout, or any other liquid, beverage or article containing alcohol, or while under the influence of any other self-administered intoxicant or drug of whatsoever nature.

"Section 2: Any person who violates any provision of this ordinance shall be guilty of a misdemeanor, punishable by a fine of not less than one hundred dollars nor more than one thousand dollars or imprisonment for not less than one month nor more than six months, either or both in the discretion of the Court or jury trying the same, for a first offense. Any person convicted of a second, or other subsequent offense under this ordinance shall be punishable by a fine of not less than one hundred dollars nor more than one thousand dollars and by imprisonment for not less than one month, nor more than one year."

The accused assigns as error the giving and refusing of certain instructions, and the refusal of the court to set aside the verdict of the jury as contrary to the evidence and without evidence to support it.

The evidence adduced by the city is as follows:

"Police Officer H. L. Helvin testified * * that at approximately 5:40 A. M., on Sunday morning, May 4, 1941, he observed an automobile with white sidewall tires making a left-hand turn from Olney Road south into Church Street, in the City of Norfolk, Virginia. That there was only one person in the automobile, and that person was driving the same. At the time he observed this automobile he and Police Officers Pierce and Edmonds were standing midway in the 700 block of said Church Street, on the east sidewalk thereof. That the 700 block was between Olney Road on the north and Brambleton Avenue on the south. That the automobile in question nearly turned over as it rounded the corner in turning from Olney Road into Church Street. That the driver thereof was stooped over the steering wheel. That the automobile then proceeded south on Church Street and swayed to the west side of Church Street and almost struck another automobile which was parked on the west side of Church Street, then swayed to the east side of Church Street and almost struck another automobile parked there. That he and the other two officers watched the automobile proceed southwardly down Church Street to Brambleton Avenue, a distance of one block, and it made a right-hand turn from Church Street into Brambleton Avenue going westwardly on the latter and he and his two brother officers remarked to each other that the driver was drunk. That near the corner of said Church Street and Brambleton Avenue Police Officers Pierce and Edmonds met another police officer who was in an automobile. They got into this automobile and followed the automobile of defendant. That he, Helvin, then went to the Second Precinct Police Station which is about two blocks from Olney Road and Church Street, and Edmonds came up with the defendant, Charles M. Harrell, and the defendant's automobile. That the said Charles M. Harrell was the same person he had seen drive the automobile from Olney Road into Church Street, as above, and the automobile was the same automobile he had seen the said Charles M. Harrell so drive. Helvin testified that the defendant was drunk, was under the

influence of an intoxicating liquor, that he smelled an odor of some alcoholic beverage on his breath, that he staggered when he walked, and had to use the side of the car for support."

This evidence was corroborated by officers Pierce and Edmonds.

The defendant testified, in substance, that he had attended a penny-ante poker party at the home of a friend at Virginia Beach on Saturday night; that he drank two highballs prior to 1 o'clock A. M., that during the course of the evening he had taken a nembutal pill which had been prescribed by his dentist to ease the pain caused by an impacted wisdom tooth; that he took three of the ladies home after the party broke up and was absolutely normal in every respect; that his tooth began hurting again and before proceeding to Norfolk, he took two more nembutal pills; that en route to Norfolk he became drowsy and did not recall exactly what occurred, although he had some recollection of smacking his face in an effort to keep awake.

Mrs. Dolly Shuford, testifying on behalf of the defendant, stated that she was a widow residing at Virginia Beach, Virginia; that she went with Mr. Harrell to the home of some friends on the night of Saturday, May 3rd, for the purpose of playing penny-ante poker. She said Mr. Harrell arrived at her home late, due to the fact that he had had to work. At the request of their hostess, Mrs. Shuford said, she and Mr. Harrell went by the A. B. C. store and purchased one quart of whiskey. They arrived at their friend's home about 10 o'clock, P. M., and in company of the other guests, eight in all, played poker until the early hours of Sunday morning, leaving their hostess' home at approximately 3:30 A. M. She stated that the one quart of whiskey which they had purchased was the only alcoholic beverage at the party and was used to make highballs and each guest had approximately two; that she did not notice exactly what Mr. Harrell had to drink, but he apparently had no more than two drinks and most certainly conducted himself in the same manner as the other guests, namely, in a quiet and orderly way. When the party broke up, she said, Mr. Harrell drove his car and took

not only her, but Mrs. Constance Moore and Mr. Robert Harper to their respective homes at Virginia Beach. Mr. Harrell took Mrs. Shuford home last, she stated, and they stopped and had a sandwich, but absolutely no alcoholic beverage, and he left to drive to Norfolk sometime around 4:30 or 5 o'clock in the morning, at which time she said Mr. Harrell was absolutely sober, although he had been complaining about his impacted wisdom tooth and took a couple of pills that his dentist had given him to relieve the pain.

Dr. Walter E. Miller, a practicing dentist in the city of Norfolk, stated that he had treated the defendant on Friday, May 2nd, for an impacted wisdom tooth and that at the time had given him a small envelope of pills containing nembutal, a medicine composed of phenobarbital and aspirin. He also referred to this medicine as an hypnotic. Dr. Miller said that he had given this medicine to Mr. Harrell with instructions *to take one* in the event his tooth hurt him and he could not sleep. He was asked to describe the effect of the drug, and in reply stated that it would make one sleepy, that it had an effect on the appearance of the eyes, and, as it caused a general drowsiness, it also affected the speech. He was specifically asked whether a person, after taking this medicine, could be mistaken for being drunk and he replied that in many respects the outward effect was the same. The doctor was also asked what effect taking more than one pill would have. To this question he replied that the more medicine taken, the greater would be its effect. He further testified that he had not explained the nature of the drug to Mr. Harrell, except to instruct him to take it in the event his tooth hurt him and he could not sleep. One of the jurors asked Dr. Miller whether this drug would produce an alcoholic odor on the breath of the person taking the same, and he replied that it would not.

[■] The verdict of the jury has settled the conflict in the evidence in favor of the city, which concludes the case, unless the giving and refusing of the instructions complained of constitutes reversible error.

On motion of counsel for the city, the court gave this instruction, which is assigned as error:

"The Court instructs the jury that if they believe from the evidence in this case beyond a reasonable doubt that the accused at the time in question, operated an automobile while under the influence of both whiskey and the pills he had taken, they should find him guilty."

There is no merit in this assignment of error.

The warrant under which defendant was tried charged him with operating an automobile while under the influence of intoxicants. The defense set up was that defendant was under the influence of the pills he had taken. While it is true that there was no request for an amendment of the warrant to include a violation of the ordinance for driving an automobile while under the influence of a self-administered drug, this issue was presented by the testimony of the defendant. Whether the defendant, while driving the automobile in question, was under the influence of intoxicants, under the influence of a self-administered drug, or under the combined influence of both whiskey and the nembutal pills, was purely a question of fact to be determined by the jury. The instruction merely told the jury that if they believed from the evidence, beyond a reasonable doubt, that the defendant was under the influence of "both whiskey and the pills he had taken, they should find him guilty."

The defense urged, that the pills were taken on the advice of the dentist and in ignorance of the ultimate result, is more specious than real. The instruction of the dentist to the defendant was to "take one (pill) in the event his tooth hurt him and he could not sleep." This should have been notice to defendant that the pills, when taken, would produce drowsiness. Notwithstanding the fact that defendant had taken one pill earlier in the evening, he proceeded to drink two highballs during the progress of the party, and before starting for Norfolk, proceeded to take two pills, instead of one as advised by the dentist. Whether the influence of the whiskey or the influence of the drug predominated, there is no doubt that defendant's condition, while driving his automobile, presented a menace to persons on the streets at that early hour of the morning. Though it may be conceded that

two highballs will not ordinarily produce intoxication, it is a matter of common knowledge that the condition of one's stomach has a great deal to do with the amount of whiskey required to produce intoxication.

In *State* v. *Rodgers*, 91 N. J. L. 212, 102 A. 433, where a statute similar to the city ordinance was under consideration, the court had this to say:

"Under the influence of intoxicating liquor covers not only the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulgence in any degree of intoxicating liquor and which tends to deprive the one so using it of the clearness of intellect and control of himself which he would otherwise possess."

In *Owens* v. *Commonwealth*, 147 Va. 624, 136 S. E. 765, this court held that in a prosecution for driving an automobile while under the influence of intoxicants, the test to be applied "is not merely the ability of the driver to operate the automobile with safety to himself and others, but whether or not he is under the influence of intoxicants at the time he is driving or running an automobile, and this question is one of fact to be determined by the jury."

The instruction presented the case fairly to the jury, for it must be conceded that if defendant was under the influence of *both the whiskey and the pills*, he undoubtedly was under the influence of the whiskey.

In *Kessler* v. *State*, 136 Tex. Cr. App. 340, 125 S. W. (2d) 308, defendant was prosecuted for driving an automobile while under the influence of intoxicants and there was proof that she was intoxicated. Her defense was that she was not intoxicated but had taken several tablets of amytal, the effect of which was to produce drowsiness. A physician testified that amytal was a sedative and that, when taken, it had the same effect as whiskey. The defendant contended that the court committed error in refusing to give an instruction to the jury, to the effect that if the jury believed she was intoxicated from *both* the amytal and the whiskey consumed, they should acquit her. In holding this contention untenable, the court said:

"Appellant next contends that the court erred in declining to give her special requested instruction to the effect that if she was intoxicated on the night in question from the combined use of amytal and whiskey to acquit her. We are of the opinion that she was not entitled to such an instruction. If she indulged in the use of amytal to such an extent that she made herself more susceptible to the influence of intoxicating liquor than she otherwise would have been and by reason thereof became intoxicated from the recent use of ardent spirits, she would be in the same position as though her intoxication was produced by the use of whiskey alone. A person who gets himself in a condition whereby he may become intoxicated from a lesser quantity of whiskey than it would ordinarily take to produce intoxication is nevertheless intoxicated from the use of whiskey."

There is no merit in the assignment of error.

The defendant also complains of the action of the court in refusing to give this instruction:

"The Court instructs the jury that if they believe from the evidence that the defendant, Charles M. Harrell, operated his automobile under the influence of a drug, the effect of which he did not understand or appreciate, then even though such drug was self-administered, you cannot find him guilty as charged unless you further believe that he would have been guilty of operating his automobile while under the influence of an intoxicant whether said drug had been administered or not."

The chief vice in the instruction is the language "the effect of which he did not understand or appreciate." There is no evidence to sustain this contention. Then, too, the instruction is in conflict with the instruction given on behalf of the City.

Upon the whole case, we see no error in the judgment complained of and we are, therefore, of opinion to affirm it.

*Affirmed.*