COMMONWEALTH *VS.* JOANNE P. SAVAGE.

Franklin. October 5, 1999. - November 4, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Search and Seizure,* Arrest, Pursuit. *Arrest. Constitutional Law,* Search and seizure. *Statute,* Construction. *Police,* Unlawful arrest. *Motor Vehicle,* Operating under the influence.

A Vermont State trooper was without authority to stop an erratically driven car on a Massachusetts highway, where the trooper had not observed the vehicle so operated in Vermont and was not in fresh pursuit [343-344]; where the stop was not otherwise authorized under G. L. c. 276, § 10A [344-346]; and where, because the offense for which the stop was made was a misdemeanor, the stop was not a valid citizen's arrest [346-347]: evidence seized as a result of the unlawful stop should have been excluded from evidence at the subsequent trial of a complaint for operation of a motor vehicle while under the influence of intoxicating liquor [347].

COMPLAINT received and sworn to in the Greenfield Division of the District Court Department on August 18, 1997.

A pretrial motion to suppress evidence was heard by *M. John Schubert, Jr.,* J., and the case was tried before *W. Michael Ryan,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul D. Barry* for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. We are asked to determine whether a Vermont State trooper's stop of a motorist in Massachusetts for driving while under the influence of intoxicating liquor was lawful. Because we conclude that the stop was an unlawful extraterritorial stop, we reverse the defendant's conviction.

The facts are not in dispute. It was a rainy evening on August 16, 1997, and Trooper David Gerard of the Vermont State police was on duty patrolling Interstate 91 in Vermont. At approximately 8:35 P.M., the dispatcher advised Trooper Gerard of

a telephone call reporting a brown vehicle with Massachusetts registration plates driving erratically and traveling southbound on Interstate 91 in Vermont near exit 2. After waiting for the brown vehicle between exits 1 and 2, and not locating it, Trooper Gerard radioed the dispatcher and asked for a description of the caller's vehicle. Trooper Gerard learned that the caller was driving a green Jeep, which he had just seen pass his location. After stopping the green Jeep five miles north of the Massachusetts border, Trooper Gerard spoke with the driver who reported that the brown car was "all over the road," and had been driving toward Massachusetts at a high rate of speed. Trooper Gerard then proceeded rapidly toward Massachusetts on Interstate 91. As he approached the border, Trooper Gerard asked the dispatcher to notify the Massachusetts State police, but learned that they did not have any officers available in that area. Neither Trooper Gerard nor any other police officer had actually observed the brown vehicle driving erratically in Vermont.

After crossing the Massachusetts border, Trooper Gerard saw what he thought might be the brown vehicle that was the subject of the complaint pull into a rest stop. Trooper Gerard followed the brown vehicle as it left the rest area, and for the first time personally observed erratic driving. Trooper Gerard then activated his cruiser lights and pulled the brown vehicle over. As the defendant rolled down her window, Trooper Gerard smelled the odor of alcohol and noticed her bloodshot eyes. Trooper Gerard asked the defendant to get out of the vehicle and to wait with him in his cruiser for the Massachusetts State police to arrive. After approximately ten minutes, Trooper Thomas Murphy of the Massachusetts State police arrived, performed a field sobriety test, and arrested the defendant for operating while under the influence of alcohol.

On August 18, 1997, the defendant was arraigned in Greenfield District Court on the charge of operating a motor vehicle while under the influence of liquor, G. L. c. 90, § 24, which charge was later amended to reflect that this was the defendant's second offense.[1] On October 31, 1997, the defendant filed a motion to suppress seeking to exclude the evidence obtained as a result of the stop of the defendant by the Vermont State trooper

---

[1]The defendant was also charged with a civil infraction of driving outside marked lanes, G. L. c. 89, § 4A, on which the judge found the defendant not responsible.

while in the Commonwealth. Following a December 12, 1997, hearing, the judge denied the defendant's motion to suppress on January 30, 1998. On September 8, 1998, the defendant was convicted at a jury-waived trial. That same day, the defendant filed a timely notice of appeal from her conviction.

The defendant contends that the stop, and subsequent arrest, were unlawful because the Vermont State trooper was acting outside his jurisdiction, and that the stop was not authorized either by statute or at common law as a citizen's arrest. In general, we note that a police officer may lawfully act only within jurisdictional limitations except if specially authorized to act by statute or if the officer is performing a valid citizen's arrest under common law.

We begin with a statutory analysis. We apply Massachusetts law to determine whether the stop was lawful. See *Commonwealth* v. *Gullick*, 386 Mass. 278, 281 (1982) (concluding, when analyzing validity of arrest effectuated by Massachusetts police officers in New Hampshire, that "the validity of an arrest is determined by the law of the State in which the arrest is made" and applying New Hampshire law). General Laws c. 276, § 10A, empowers an officer of another State to make an arrest in the Commonwealth as long as that arrest is of a suspected felon and is made in "fresh pursuit" of an arrest.[2]

This arrest falls outside the purview of G. L. c. 276, § 10A, because the statute applies only to felonies, and an initial offense of operating a motor vehicle while under the influence of liquor is a misdemeanor. See note 6, *infra*, and accompanying text. In any event, on these facts, the "fresh pursuit" requirement of G. L. c. 276, § 10A, was not met. While in Vermont, Trooper Gerard did not personally observe the brown vehicle being operated erratically. Nor did a fellow officer of the Vermont State police observe the brown vehicle while in Ver-

---

[2]General Laws c. 276, § 10A, provides, in pertinent part, that "[a]ny member of a duly organized state, county or municipal peace unit of another state of the United States . . . who enters this commonwealth in fresh pursuit, and continues herein in such fresh pursuit, of a person in order to arrest him on the ground that he has committed a felony in such other state shall have the same authority to arrest and hold in custody such person as members of a duly organized state, county or municipal peace unit of this commonwealth have . . . ."

mont.[3] Rather, Trooper Gerard received his information from the civilian operator of the green Jeep. Information received in such a manner is not necessarily reliable.[4] These facts compel the conclusion that Trooper Gerard was not in "fresh pursuit" of the defendant's vehicle at the moment he crossed from Vermont into Massachusetts. The Commonwealth concedes as much, and acknowledges that the "fresh pursuit" requirement was not met because the defendant, while in Vermont, did not commit an offense in the presence of an officer.

Rather, the Commonwealth argues that we should extend the scope of G. L. c. 276, § 10A, to allow out-of-State officers to perform arrests whenever a Massachusetts officer is unavailable to respond to a dispatch. We decline to adopt such a reading of the statute. General Laws c. 276, § 10A, expressly applies only to those extraterritorial arrests obtained in "fresh pursuit" of a felon. The statute, by its plain language, does not contemplate application to arrests across jurisdictional lines that lack "fresh pursuit." See *Duracraft Corp.* v. *Holmes Prods. Corp.*, 42 Mass. App. Ct. 572, 575 (1997), *S.C.*, 427 Mass. 156 (1998), quoting *Massachusetts Community College Council* v. *Labor Relations Comm'n*, 402 Mass. 352, 354 (1988) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the court is to enforce it according to its terms").

The Commonwealth's reliance on *Commonwealth* v. *Morrissey*, 422 Mass. 1 (1996), for an extension of the statute is misplaced. In *Commonwealth* v. *Grise*, 398 Mass. 247 (1986), applying G. L. c. 41, § 98A,[5] we affirmed the dismissal of a complaint charging operating while under the influence of

---

[3]Cf. *Commonwealth* v. *Zirpolo*, 37 Mass. App. Ct. 307, 310-311 (1994) (observations of fellow officer can be imputed to satisfy fresh pursuit requirement of G. L. c. 41, § 98A, when both officers are acting in a joint effort to apprehend defendant).

[4]We also note that Trooper Gerard did not receive information that would definitively allow him to identify the vehicle that was the subject of the complaint while he was patrolling in Vermont. All Trooper Gerard knew while he was in Vermont was that a brown vehicle with Massachusetts registration plates was the subject of a complaint. The officer did not know the make or model of that vehicle or its registration number. The brown vehicle he observed may not have been the same vehicle that was the subject of the complaint.

[5]In 1967, the Legislature adopted G. L. c. 41, § 98A, which governs extraterritorial arrests between governmental entities wholly within the Com-

intoxicating liquor. In that case, two Ludlow police officers observed a traffic violation, stopped the defendant, and arrested him for operating while under the influence. The observation, stop, and arrest all occurred within the Springfield city limits. We concluded that the arrest was unlawful because it took place wholly outside the jurisdiction of the Ludlow officers. Like the *Grise* case, the *Morrissey* case also concerned an in-State extraterritorial arrest. In the *Morrissey* case, however, the West Boylston police department specifically requested that an officer of the Sterling police department render assistance. When the Sterling police officer observed a car being driven erratically, he communicated by radio with the West Boylston police department and received authorization to stop the car within the West Boylston town limits. We upheld that arrest as lawful. *Id.* at 6.

This case is more like the *Grise* case than the *Morrissey* case. As we stated in *Commonwealth* v. *Morrissey, supra* at 3-4:

> "We concluded in *Grise* that the arrest was unlawful because it occurred outside the arresting officer's jurisdiction, and that evidence which would not have been obtained but for the arrest should be suppressed . . . . Here, [the officer] stopped the defendant at the request of a police officer whose jurisdiction included the place where the stop occurred. We think that a critical distinction."

Here, Trooper Gerard radioed the Massachusetts State police to inform them of the report he had heard regarding erratic driving. The Massachusetts State police neither requested that Trooper Gerard enter Massachusetts nor gave him the authorization to stop the vehicle in Massachusetts. In addition, our

monwealth. General Laws c. 41, § 98A, provides in part: "A police officer of a city or town who is empowered to make arrests within a city or town may, on fresh and continued pursuit, exercise such authority in any other city or town for any offense committed in his presence within his jurisdiction for which he would have the right to arrest within his jurisdiction without a warrant." General Laws c. 41, § 98A, broadened the common-law rule by allowing fresh pursuit arrests for both felonies and misdemeanors committed within the officer's presence and within the officer's jurisdiction. See *Commonwealth* v. *Grise*, 398 Mass. 247, 249 (1986). Although G. L. c. 41, § 98A, and G. L. c. 276, § 10A, differ in scope, because G. L. c. 41 § 98A, includes fresh pursuit arrests for misdemeanors, much of the same reasoning underlies both statutes, and the same type of analysis is applicable. As such, the case law interpreting G. L. c. 41, § 98A, is persuasive and instructive in the instant case.

conclusion in *Commonwealth* v. *Morrissey, supra,* did not abrogate the statutory requirement of "fresh pursuit." There the Sterling police officer had personally observed the erratic driving when he radioed to request the authority to stop the defendant. Here, Trooper Gerard had not seen the defendant's vehicle when he entered Massachusetts. We therefore conclude that the stop was not authorized by G. L. c. 276, § 10A.

Even if not authorized by statute, an officer's extraterritorial arrest can be valid at common law if it would be lawful as a citizen's arrest. However, the stop in this case was not a valid citizen's arrest because a first offense of operating while under the influence is a misdemeanor. We have recognized that an arrest for the commission of a felony outside an officer's jurisdiction can be a lawful citizen's arrest. See *Commonwealth* v. *Gullick,* 386 Mass. 278, 282-283 (1982). See also *Commonwealth* v. *Harris,* 11 Mass. App. Ct. 165, 169-170 (1981). In *Commonwealth* v. *Claiborne,* 423 Mass. 275, 281 (1996), in discussing the apprehension of a felon for armed robbery, we noted that "the requirements for a citizen's arrest are relaxed in the case of arrests by police officers acting outside their jurisdiction." Here, however, the stop was for the suspected commission of a misdemeanor. As we concluded in *Commonwealth* v. *Grise,* 398 Mass. 247, 251 (1986), in the "absence' of legislative direction" we have declined to validate a private person's power to arrest a suspect for a misdemeanor because such an arrest "might only encourage 'vigilantism and anarchistic actions.' " Both in Massachusetts and Vermont, an initial offense of operating a motor vehicle while under the influence of liquor is a misdemeanor. See G. L. c. 274, § 1; G. L. c. 90, § 24; *Commonwealth* v. *Grise, supra* at 250; 13 Vt. Stat. Ann. § 1 (1998); 23 Vt. Stat. Ann. § 1201 (1998); 23 Vt. Stat. Ann. § 1210 (1998).[6] Thus, the arrest in this case was not a valid citizen's arrest.

Despite the Commonwealth's urging, we adhere to precedent and decline to validate a citizen's arrest for a misdemeanor. While we recognize the "strong public policy . . . against

---

[6]Although three convictions in ten years for operating while under the influence is a felony, G. L. c. 90, § 24 (1) (*a*) (1), see *Commonwealth* v. *Corbett,* 422 Mass. 391, 392 (1996), Trooper Gerard had no knowledge of this particular driver's conviction history. Such an offense is properly classified as a misdemeanor for purposes of G. L. c. 276, § 10A, unless officers have knowledge that an operator has prior convictions, and thus is committing a felony by again driving while under the influence.

drunk driving,'' in the past we have refused to further that policy "through the circuitous route of empowering private persons to arrest for misdemeanors." *Commonwealth* v. *Grise, supra* at 252. The decision to extend police authority for extraterritorial stops and arrests in the context of drunk driving requires a balancing of social interests that is better addressed to the Legislature as a request to amend the relevant statutes. See *id.*

In the absence of legislative action, we note that police departments may deal with extraterritorial arrests by having their officers sworn in as special officers in neighboring cities and towns. See G. L. c. 41, § 99; *Commonwealth* v. *Callahan,* 428 Mass. 335 (1998) (upholding Hollis, New Hampshire police officer's arrest of defendant in Pepperell, Massachusetts, when Hollis officer had been sworn in pursuant to G. L. c. 41, § 99); *Commonwealth* v. *LeBlanc,* 407 Mass. 70, 73 (1990).

Here, the Vermont State trooper acted without statutory or common-law authority when he stopped the defendant in Massachusetts. See *Commonwealth* v. *LeBlanc, supra* at 75. The remedy for such an unlawful stop and arrest is exclusion of the evidence under the "fruit of the poisonous tree" doctrine. *Wong Sun* v. *United States,* 371 U.S. 471, 488 (1963). In this case the only evidence that the defendant was operating a vehicle while under the influence of intoxicating liquor would not have been obtained but for the unlawful stop and subsequent arrest.

*Judgment reversed.*

*Finding set aside.*

*Judgment for the defendant.*