## COMMONWEALTH *vs.* JASON TWOMBLY.

Essex. October 2, 2001. - November 30, 2001.

Present (Sitting at Salem): MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Arrest. Search and Seizure,* Arrest, Pursuit. *Motor Vehicle,* Operating under the influence. *Police,* Unlawful arrest. *Statute,* Construction. *Words,* "Preservation of the peace."

Where a motorist was operating a motor vehicle at an excessive rate of speed for a considerable distance and was passing improperly at a time when there was "moderate" traffic on the road, the motorist's conduct posed an immediate risk of injury, harm, or destruction; consequently, G. L. c. 37, § 13, authorized an extraterritorial stop of the motorist to preserve the peace, to protect the public from a dangerous driver. [442-444]

COMPLAINT received and sworn to in the Newburyport Division of the District Court Department on September 28, 1998.

A pretrial motion to suppress evidence was heard by *Allen G. Swan,* J., and the case was heard by *Leah W. Sprague,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

*Judith H. Mizner* for the defendant.

COWIN, J. A judge in the District Court denied the defendant's motion to suppress all evidence obtained as a result of an allegedly improper extraterritorial stop of the defendant in Salisbury by an Amesbury police officer. After a jury-waived trial in which the defendant was convicted of operating while under the influence of intoxicating liquor, the defendant appealed, claiming that the District Court judge erroneously denied his motion to suppress. The Appeals Court set aside the finding of the District Court judge on the motion to suppress, directed that an order enter allowing the motion to suppress, and vacated the judgment of the District Court. *Commonwealth* v. *Twombly,* 50 Mass.

App. Ct. 667, 671 (2001). We granted the Commonwealth's application for further appellate review. The issue is whether the extraterritorial stop was authorized pursuant to G. L. c. 37, § 13.[1,2] We conclude that it was.

1. *Facts.* We summarize the findings of fact of the motion judge. On September 27, 1998, Sergeant William Scholtz, an Amesbury police officer, saw a vehicle travel from the Route 495 ramp in Amesbury onto Route 110 at a high rate of speed. Although unable to "clock" the defendant's speed because there were two vehicles between his cruiser and the defendant, Scholtz estimated that the defendant was traveling at fifty to fifty-five miles an hour. The speed limit was twenty-five miles an hour on the off-ramp and thirty-five miles an hour on Route 110. The car then stopped at a red traffic light. Following the vehicle in his cruiser, Scholtz saw it speeding again after the traffic light changed, and it continued at a high rate of speed into neighboring Salisbury. The total distance from the Route 495 off-ramp to the Salisbury border is about one mile. Traffic in the area was moderate.

In Salisbury, the defendant "slowed drastically," illegally passed another vehicle in a no-passing lane (putting three vehicles between the officer and the defendant), and accelerated back to fifty-five miles an hour. At that point, Scholtz radioed the Salisbury police dispatcher that the defendant was driving "erratically."[3] Scholtz inquired whether there were a cruiser nearby or if the Salisbury police wanted him to stop the vehicle.

---

[1]The defendant raises no issue as to the validity of the stop under the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights. He questions only the jurisdictional authority of the Amesbury police officer to make the stop.

[2]The motion judge grounded his denial of the motion to suppress on the alternative ruling that the stop was authorized under a mutual aid agreement between the towns of Amesbury and Salisbury pursuant to G. L. c. 40, § 8G. The Commonwealth does not rely on the existence of a mutual aid agreement as an alternative ground for affirming the conviction.

[3]Although Officer Scholtz testified that he radioed that the defendant was speeding and passing improperly, a Salisbury officer who heard the transmission testified that the communication he overheard was that the defendant was driving erratically. The judge, to whom credibility decisions are entrusted, see *Commonwealth* v. *Thinh Van Cao,* 419 Mass. 383, 384, cert. denied, 515 U.S. 1146 (1995), found that Officer Scholtz radioed that the defendant was driving "erratically." We accept the motion judge's subsidiary findings of fact absent

Officer Sforza of the Salisbury police overheard the communication and instructed the dispatcher to tell Scholtz to make the stop. The Salisbury dispatcher thus instructed Scholtz to stop the vehicle.

Scholtz stopped Twombly's vehicle by activating his blue lights. By this time, he had been following the defendant's speeding vehicle for approximately three miles. Scholtz told the defendant that he had pulled him over for speeding and improper passing, and informed him that he was an Amesbury officer and that a Salisbury police officer would arrive shortly. A few moments later, Sforza arrived. Noticing the defendant's red face, bloodshot eyes, and alcohol-scented breath, Officer Sforza conducted field sobriety tests, concluded that the defendant was operating while under the influence of alcohol, and arrested him for so operating and cited him for speeding and improper passing.[4,5]

2. *Discussion.* A police officer lacks authority to act outside his or her jurisdiction, unless specifically authorized by statute or in the performance of a valid citizen's arrest at common law. *Commonwealth* v. *Savage*, 430 Mass. 341, 343-346 (1999). The Commonwealth maintains that G. L. c. 37, § 13, authorized the extraterritorial stop in this case. The defendant argues that the statute is inapplicable because there was no basis for believing that the defendant was committing a crime.

General Laws c. 37, § 13, sets forth four situations in which police officers "may require suitable aid:" "[1] in the execution of their office in a criminal case, [2] in the preservation of the peace, [3] in the apprehending or securing of a person for a

---

clear error. See, e.g., *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited.

[4]Speeding and improper passing are civil motor vehicle infractions. A "civil motor vehicle infraction" generally is "an automobile law violation for which the maximum penalty does not provide for imprisonment." G. L. c. 90C, § 1.

[5]There is no criminal offense or civil motor vehicle infraction delineated as "driving erratically," although such driving may be a component of the offenses of operating while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (*a*) (1), or operating negligently so as to endanger, G. L. c. 90, § 24 (2) (*a*).

breach of the peace and [4] in cases of escape or rescue of persons arrested upon civil process."[6]

The defendant argues that the first three situations identified in the statute are premised on the commission of some form of crime and cannot extend to civil motor vehicle infractions (see note 5, *supra*). The Commonwealth argues that the statute is not so limited, and that the defendant's conduct amounted to a "breach of peace" within the meaning of the statute, or, in the alternative, that a stop of the defendant was justified to "preserv[e] the peace." We conclude that this stop comes within the "preservation of the peace" provision of G. L. c. 37, § 13.[7]

The second clause of the statute authorizes police officers to require assistance in "the preservation of the peace." Our jurisprudence has not yet defined this term. We interpret terms according to their ordinary and approved usage. *Commonwealth v. Smith*, 431 Mass. 417, 422 (2000). We must interpret these words to mean something other than the "apprehen[sion]" of a defendant for "breach of the peace," as any interpretation equating the two would make the "preservation of the peace" provision redundant.

To "preserve" means "to keep safe from injury, harm, or destruction." Webster's New Collegiate Dictionary 903 (1980 ed.). Preservation of the peace thus means to keep the peace, to prevent injury, harm, or destruction. Accordingly, an officer may require aid for the preservation of the peace, to avoid injury or harm, or to prevent a breach of the peace. Allowing an officer to request aid to "apprehend[] or secur[e]" someone for "a breach of the peace" suggests that the actual "breach of the peace" has already occurred. Allowing an officer to request aid "in the preservation of the peace" suggests that a breach of the

---

[6]"General Laws c. 37, § 13 . . . applies by its terms to sheriffs. It applies to constables by virtue of G. L. c. 41, § 94 . . . which provides that constables 'shall have the powers of sheriffs to require aid in the execution of their duties,' and to police officers by virtue of G. L. c. 41, § 98 . . . which provides that 'police officers of all cities and towns shall have the powers and duties of constables except serving and executing civil process.' " *Commonwealth* v. *Morrissey*, 422 Mass. 1, 4 n.4 (1996).

[7]We therefore do not reach the question whether the defendant's conduct had yet amounted to a "breach of the peace," and express no opinion as to the applicability of that provision of G. L. c. 37, § 13.

peace has not yet occurred, but that there is imminent danger of such a breach occurring.

Had the defendant been charged with operating negligently so as to endanger based on Sergeant Scholtz's observations, a crime would be involved and the first provision of the statute clearly could be applicable. But the defendant was not charged with that offense, and the operation of the vehicle witnessed by Sergeant Scholtz did not yet reach the level of operating negligently so as to endanger. Cf. *Commonwealth* v. *Poillucci*, 46 Mass. App. Ct. 300, 304 (1999). Nevertheless, the fact that the defendant had been driving well over the speed limit for a considerable distance, had passed improperly, and showed no sign of reducing his speed, suggests an imminent danger of such an offense occurring. Without regard to the precise moment at which the operation of the vehicle would cross into criminal conduct, the operation was at least raising an imminent and substantial danger to others on the road. These acts are in contrast to others that, while offending in some other respect, do not pose any imminent threat to endanger the public, such as "drunkenness in private," or the "possession of short lobsters," *Commonwealth* v. *Gorman*, 288 Mass. 294, 298 (1934), and cases cited; registering bets, *Commonwealth* v. *Mekalian*, 346 Mass. 496, 497-498 (1963); or driving after suspension or revocation of a license, *Commonwealth* v. *Baez*, 42 Mass. App. Ct. 565, 568-570 (1997). By comparison, a driver who operates at an excessive rate of speed for a considerable distance, and passes improperly, at a time when there is "moderate" traffic on the road, poses an immediate risk of injury, harm, or destruction. Stopping such a motorist would be an act to preserve the peace, to protect the public from a dangerous driver.

Accordingly, we conclude that the extraterritorial stop in this case was authorized pursuant to G. L. c. 37, § 13.

*Judgment affirmed.*