COMMONWEALTH *vs.* STEVEN M. LAHEY.

No. 10-P-568.

Bristol. April 1, 2011. - October 12, 2011.

Present: GRASSO, KAFKER, & SIKORA, JJ.

*Motor Vehicle,* Operating under the influence, Operating to endanger, License to operate. *Arrest. Police,* Unlawful arrest. *Search and Seizure,* Inevitable discovery, Pursuit. *Practice, Criminal,* Motion to suppress.

Discussion of the standard of review applicable to an appeal from a decision regarding an individual's statutory and common-law right to freedom from seizure and search by a police officer outside his lawful jurisdiction. [609]

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress evidence resulting from the extraterritorial stop and detention of his automobile by a police officer of an adjacent town, where, although the officer's action was not authorized by statute or in the performance of a valid citizen's arrest [610-611], the judge's specific subsidiary facts established, as an ultimate fact, the inevitability of the discovery of the defendant by police officers of the town in which he was stopped, and that the officer who stopped the defendant did so in good faith not to arrest him but to remove him from the highway and prevent a fatal accident [612-614].

A Superior Court judge did not abuse her discretion in denying the renewal of the criminal defendant's pretrial motion to suppress evidence, in which the defendant claimed that he had newly-discovered exculpatory evidence, where the renewal motion was extraordinarily late and the evidence in question was readily discoverable for use in the original motion, and where the evidence would not have undermined the validity of the judge's subsidiary and ultimate findings or conclusion of law. [614-616]

INDICTMENTS found and returned in the Superior Court Department on March 28, 2008.

A pretrial motion to suppress evidence was heard by *Merita A. Hopkins,* J., and a motion to renew the motion to suppress was considered by her; the cases were tried before *E. Susan Garsh,* J.

*William T. Harrington* for the defendant.

*Travis Carter (Rachel J. Eisenhaure,* Assistant District Attorney, with him) for the Commonwealth.

SIKORA, J. At the conclusion of a bifurcated trial in Superior Court, the defendant was convicted of operating a motor vehicle under the influence of intoxicating liquor (OUI), seventh offense, G. L. c. 90, § 24(1)(a)(1); operating to endanger, G. L. c. 90, § 24(2)(a); and operating after revocation of his license, G. L. c. 90, § 23.[1] On appeal he challenges the pretrial denial of his motion to suppress evidence resulting from the stop and detention of his automobile by a police officer of an adjacent town. He contends that the motion judge improperly applied the doctrine of inevitable discovery of incriminating evidence and that she later abused her discretion by denial of his request to renew the motion to suppress. For the following reasons, we affirm.

*Facts.* 1. *Suppression findings.* The evidence received at the two hearings upon the motion to suppress supported the following findings by the judge.[2] On the evening of December 25, 2007, Norton police Officer Jeffrey Zaccardi escorted an ambulance to Sturdy Memorial Hospital in the neighboring town of Attleboro. After the arrival of the ambulance, Zaccardi drove his marked patrol car back toward Norton on Route 123, a two-lane east-to-west highway. As he traveled in the eastbound lane and still in Attleboro, he saw the defendant's car coming westward in the eastbound lane. It was moving at an excessive speed, and passing westbound vehicles in a no-passing zone.[3] Zaccardi swerved off the roadway to avoid a head-on collision.

Zaccardi then reversed direction, turned on his patrol car's light bar and siren, and began pursuit of the defendant's car. Simultaneously he radioed his Norton police dispatcher and directed him to notify the Attleboro police dispatcher to send

---

[1] A jury convicted the defendant of OUI and operating to endanger. The defendant waived his right to a jury trial on the subsequent offense portion of the OUI charge and on the charge of operating after suspension for OUI. He stipulated to the previous six OUI convictions and to his awareness of the revocation of his license.

[2] The Commonwealth called two witnesses at the suppression hearings, Norton police Officer Jeffrey Zaccardi and Attleboro police Officer Richard Pierce. The defendant did not call any witnesses.

[3] Zaccardi had made many trips to Sturdy Hospital. He estimated the speed limit on Route 123 to be forty miles per hour.

assistance to the pursuit.[4] Zaccardi saw the defendant attempt unsuccessfully to pass vehicles; oncoming traffic blocked that maneuver. He overtook the defendant after one-half mile and forced him to the side of the road.

Zaccardi walked to the defendant's car, requested and received his keys and driver's license, and instructed him and a passenger to place their hands on the dashboard. At that time, he could hear the siren of an approaching Attleboro cruiser. It arrived within approximately twenty to thirty seconds of Zaccardi's receipt of the keys and license. Two Attleboro officers then conducted an investigation of the scene and collected evidence resulting in the eventual charges. Zaccardi briefed them about his observations and left within a few minutes. An Attleboro officer testified that their cruiser had reached the location of the stop in "[l]ess than one minute" after receipt of dispatch. Zaccardi testified, and the judge specifically found, that the purpose of his pursuit and detention of the defendant was the prevention of a fatal accident.

2. *Suppression rulings.* The defendant argued that Zaccardi, as a Norton police officer, lacked jurisdictional authority to stop the defendant in Attleboro; and that the substantial incriminating evidence resulting from the stop should be inadmissible because neither statutory nor common-law sources permitted an extraterritorial stop in these circumstances. In a detailed memorandum of decision, the judge agreed that neither statutory authorizations nor common-law doctrine appeared to validate the stop. She concluded, however, that the concept of inevitable discovery by lawful police action applied to the circumstances and provided a valid basis for admission of evidence yielded by the stop. She found that Officer Zaccardi had pursued the defendant in good faith for an urgent purpose of public safety and that his dispatch notices to the Attleboro police had assured their proper interception of the defendant.

3. *Request to renew the motion to suppress; the turret tape.* Approximately eight months after the judge's findings and rulings and five weeks before trial, the defendant moved to renew

---

[4]The Norton and Attleboro police departments did not have interoperable radios and therefore had to communicate through their respective dispatch operators.

his motion to suppress upon the ground that an audio recording of Zaccardi's dispatch communications, or cruiser "turret" tape, would show that the Attleboro police had not arrived at the site until five minutes after the stop. The judge denied leave to renew the motion upon the grounds that defense counsel's ability to have known and to have presented any turret tape information at the suppression hearing ten months before amounted to waiver and that the time measurements of the tape would not offer new ground showing a need to review the earlier findings.

*Analysis.* The defendant argues generally that the concept of inevitable discovery should not apply to extraterritorial police stops and specifically that the evidence in this case does not establish the inevitability of his discovery by the Attleboro police. He challenges also the judge's denial of his request to renew his motion to suppress as an abuse of discretion.

1. *Inevitable discovery. a. Standard of review.* Most commonly, appeals from suppression decisions present constitutional questions of allegedly unreasonable search or seizure under the standards of the Fourth Amendment to the United States Constitution or art. 14 of the Declaration of Rights of the Massachusetts Constitution. Scores of cases establish the standard of review. The appellate court accepts the motion judge's subsidiary findings of fact unless they are clearly erroneous. It conducts an independent review of her ultimate findings and conclusions of law. See, e.g., *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004); *Commonwealth* v. *Colon*, 449 Mass. 207, 214, cert. denied, 552 U.S. 1079 (2007). Under this standard, the credibility and weight of testimony remain the province of the motion judge directly observing the witnesses. See, e.g., *Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002); *Commonwealth* v. *Clark*, 65 Mass. App. Ct. 39, 43 (2005), and cases cited.

Our case concerns not the usual constitutional contentions, but rather a statutory and common-law right of an individual to freedom from seizure and search by a police officer outside his lawful jurisdiction. The identity of the interests in freedom and privacy and the evidentiary consequences of suppression or admission of the resulting evidence lead us logically to apply the same standard of review to the defendant's nonconstitutional argument against the action of the police.

b. *Principle of jurisdictional limits.* "A police officer lacks authority to act outside his or her jurisdiction, unless specifically authorized by statute or in the performance of a valid citizen's arrest at common law." *Commonwealth* v. *Twombly*, 435 Mass. 440, 442 (2001). It is a statutory violation for a police officer to engage in extraterritorial action without valid authority. See *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 75 (1990); *Commonwealth* v. *Hernandez*, 456 Mass. 528, 532 (2010). The appropriate remedy for unauthorized extraterritorial action is suppression of the resulting evidence. See *Commonwealth* v. *Grise*, 398 Mass. 247, 253 (1986) (exclusion of evidence and dismissal of charges); *Commonwealth* v. *LeBlanc, supra* at 75 (police officer may not pursue motorist across his jurisdictional boundary for nonarrestable traffic violation; stop and arrest invalid; all resulting evidence of OUI suppressed); *Commonwealth* v. *Savage*, 430 Mass. 341, 347 (1999) (exclusion of evidence resulting from Vermont State trooper's arrest of intoxicated driver in Massachusetts); and *Commonwealth* v. *Hernandez, supra* at 532-533 (exclusion of evidence resulting from arrest of defendant by university campus police at place and for suspected conduct having no connection to university's property, facilities, or activities). Several statutory provisions authorize extraterritorial police action in well defined situations.[5] The motion judge specifically excluded their application in this case. She

---

[5]General Laws c. 41, § 98A, authorizes police officers to make "extraterritorial 'fresh pursuit' arrests for any arrestable offense, whether it be a felony or misdemeanor, initially committed in the arresting officer's presence and within his jurisdiction." *Commonwealth* v. *LeBlanc, supra* at 72. General Laws c. 37, § 13, permits officers "to request the assistance of any private person 'in the apprehending or securing of a person for a breach of the peace.' " *Commonwealth* v. *Morrissey*, 422 Mass. 1, 6 (1996), quoting from G. L. c. 37, § 13. The person receiving such a request gains authority to stop the suspect. *Ibid.* General Laws c. 40, § 8G, empowers a city or town to enter into an agreement with one or more other cities or towns "to provide mutual aid programs for [their] police departments to increase the capability of such departments to protect the lives, safety, and property of the people in the area designated in the agreement." In a similar vein, G. L. c. 41, § 99, authorizes municipalities to appoint police officers from neighboring cities or towns as special police officers, and to clothe those officers with police power in the appointing municipality, having "the same immunities and privileges as when acting within their respective cities and towns."

As the motion judge correctly acknowledged, none of these statutes applies in this case. General Laws c. 41, § 98A, does not apply because the entire

excluded also the common-law exception for a permissible citizen's arrest[6] and the constitutional allowance for the police exercise of the community caretaker function in circumstances of a public safety emergency.[7]

incident occurred in Attleboro. Cf. *Commonwealth* v. *O'Hara*, 30 Mass. App. Ct. 608, 609-610 (1991) (West Bridgewater officer who witnessed defendant's erratic operation in West Bridgewater authorized to pursue and arrest defendant in Brockton). General Laws c. 37, § 13, does not apply because the Attleboro police did not request Zaccardi's assistance. Cf. *Commonwealth* v. *Morrissey*, *supra* at 3-4 (Sterling police officer authorized to make extraterritorial stop in West Boylston because West Boylston police officer requested assistance). General Laws c. 40, § 8G, does not apply because Attleboro and Norton did not have a mutual aid agreement. Finally, G. L. c. 41, § 99, does not apply because Attleboro had not deputized Zaccardi as a special police officer. Cf. *Commonwealth* v. *Nicholson*, 56 Mass. App. Ct. 921, 922 (2002) (West Bridgewater officer authorized to stop intoxicated driver in East Bridgewater because he had been sworn in as a special police officer for East Bridgewater).

[6]Absent statutory authority, "an officer's extraterritorial arrest can be valid at common law if it would be lawful as a citizen's arrest." *Commonwealth* v. *Savage, supra* at 346. "In Massachusetts a private person may lawfully arrest someone who has in fact committed a felony." *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 170 (1981). Operating under the influence, seventh offense, is a felony. See G. L. c. 274, § 1 ("A crime punishable by death or imprisonment in the state prison is a felony. All other crimes are misdemeanors"); G. L. c. 90, § 24(1)(*a*)(1), as amended through St. 1999, c. 127, § 108 (defendants convicted of operating under the influence four or more times "shall be punished . . . by imprisonment in the state prison for not less than two and one-half years nor more than five years"). However, at the time of the incident, Zaccardi did not know of the defendant's prior convictions and thus he could have suspected the defendant of only a first offense of operating under the influence, a misdemeanor. See G. L. c. 90, § 24(1)(*a*)(1) (first offense of operating under the influence not punishable by imprisonment in State prison); *Commonwealth* v. *Savage, supra* (classification of OUI offense for purposes of a citizen's arrest depends on arresting citizen's knowledge of defendant's prior convictions at the time of arrest); *Commonwealth* v. *Limone*, 77 Mass. App. Ct. 903, 904-905, further appellate review granted, 458 Mass. 1102 (2010) (police officer could reasonably suspect defendant of merely misdemeanor OUI where defendant's six prior OUI convictions became known *after* his arrest). Therefore, the stop was not valid as a citizen's arrest.

[7]The judge reasoned that, in the urgent public safety circumstances along Route 123, the community caretaker authority constitutionally justified a stop of the defendant's car by the Attleboro police. The judge then stated, "Nonetheless, the Commonwealth has not cited, nor has this court found, any case law which permits a police officer to act as a community caretaker outside of his jurisdiction, even in an emergency."

In Superior Court and on this appeal, the Commonwealth has argued that Massachusetts courts should adopt an exception permitting officers to act without jurisdictional authority if they reasonably believe the lives of others to

c. *Inevitable discovery.* While an unauthorized extraterritorial stop is a statutory violation, *Commonwealth* v. *LeBlanc*, 407 Mass. at 75, and while inevitable discovery is a corollary of constitutional law, *Commonwealth* v. *O'Connor*, 406 Mass. 112, 113 (1989), no principled distinction bars their blended application to the same case. The remedy of exclusion has worked as a deterrent and sanction against official violation of statutory authority. See *Commonwealth* v. *Upton*, 394 Mass. 363, 367 n.4 (1985), and cases cited; *Commonwealth* v. *Hernandez*, 456 Mass. at 532. In *Commonwealth* v. *LeBlanc*, *supra*, the court reasoned that the exclusionary rule, as a constitutional standard, applied to an unauthorized extraterritorial stop because "[t]he requirement that a police officer have lawful authority when he deprives individuals of their liberty is closely associated with the constitutional right to be free from unreasonable searches and seizures." Accord *Commonwealth* v. *Hernandez*, *supra*. As a matter of rational and consistent doctrine, if the standard of lawful inevitability will excuse a constitutional violation of interests of freedom or privacy, then it will excuse also a statutory violation of those same interests.

In his original motion to suppress, the defendant invoked the protection of art. 14 of the Declaration of Rights. Under that provision, Massachusetts courts enforce a more restrictive standard of inevitability than does the Fourth Amendment decisional law. See *Commonwealth* v. *O'Connor*, *supra* at 117. The Commonwealth must prove by a reasonable preponderance

---

be in immediate danger. At present, the decisional law does not support the adoption of such an exception. In *Commonwealth* v. *Savage*, *supra*, a Vermont State trooper, acting without statutory or common-law authority, stopped a suspected intoxicated driver in Massachusetts. The Commonwealth urged the Supreme Judicial Court to validate the arrest by empowering private persons to arrest for misdemeanors. *Ibid.* The court declined to do so. "The decision to extend police authority for extraterritorial stops and arrests in the context of drunk driving requires a balancing of social interests that is better addressed to the Legislature as a request to amend the relevant statutes." *Id.* at 347. See *Commonwealth* v. *Grise*, 398 Mass. at 252 ("If the Legislature in its wisdom wishes to broaden the powers of police officers acting outside of their territorial jurisdictions, it may amend [the statutes] to accomplish this purpose"). Even though the Commonwealth is making a different request in this case, judicial adoption of an emergency exception as opposed to judicial expansion of citizens' arrest powers, the reasoning in *Savage* seems generally applicable and unchanged by any decision during the intervening twelve years.

of the evidence the facts "bearing on inevitability"; and must demonstrate that discovery by lawful means was "certain as a practical matter." *Ibid.* See *Commonwealth* v. *Perrot,* 407 Mass. 539, 546-547 (1990); *Commonwealth* v. *DiMarzio,* 436 Mass. 1012, 1013 (2002). "The certainty of discovery must exist at the time of the unlawful seizure, not develop as a result of circumstances occurring thereafter." *Commonwealth* v. *Ilges,* 64 Mass. App. Ct. 503, 514 (2005), citing *O'Connor, supra* at 117 n.4. Finally, the Commonwealth must show that the police have not acted with bad faith to accelerate the discovery of evidence helpful to the prosecution or harmful to the defendant. See *Commonwealth* v. *O'Connor, supra* at 118-119; *Commonwealth* v. *Sbordone,* 424 Mass. 802, 810 (1997); *Commonwealth* v. *Ilges, supra.* The motion judge's findings should be specific and detailed. *Commonwealth* v. *O'Connor, supra* at 117.

In this instance the motion judge made the following specific subsidiary findings on the basis of the credibility of the two police witnesses. The defendant at excessive speed drove into an oncoming lane and forced the Norton police cruiser to drive off the road in order to avoid a head-on collision. The Norton officer began pursuit and simultaneously directed his dispatcher to inform the Attleboro police of the chase and the need for assistance. He followed the defendant's car along a single, narrow, two-lane road on which the speed limit approximated forty miles per hour and on which oncoming traffic obstructed the defendant's attempts to accelerate and pass vehicles in his own lane. The officer forced the defendant to pull over after a distance of one-quarter to one-half mile. He took the defendant's keys and driver's license. As he did so, he heard the siren of an approaching Attleboro cruiser. It arrived within twenty to thirty seconds of the first sound of the siren. The Norton officer undertook no arrest or investigation, turned the keys and license over to the Attleboro officers, briefed them, and left.[8] The uncontradicted testimony of the Attleboro police witness was that his cruiser reached the site in less than a minute after receipt of the dispatch information. We cannot reject those credibility determinations of subsidiary facts as clearly erroneous.

[8]Zaccardi explained that he had to return promptly to Norton because his department was "shorthanded" on the Christmas holiday.

In turn, those findings establish, as an ultimate fact, the practical certainty of the discovery of the defendant by the Attleboro police. Officer Zaccardi's dispatch communications were entirely lawful and desirable, if not imperative, as action for public safety. Attleboro police would know of the location and direction of a conspicuously erratic driver heading westward into Attleboro on a single road. Traffic along the roadway hemmed him into his lane and curtailed his speed. The Attleboro police were stationed within a minute of the defendant's location. See *United States* v. *Stilling*, 346 Fed. Appx. 458, 460 (11th Cir. 2009) (inevitable discovery applicable where police officer stopped defendant's vehicle without probable cause, but another officer in pursuit had probable cause).

Finally, again as a matter of credibility supported by plausibility, the motion judge accepted the good faith of Officer Zaccardi's motivation, not to arrest the defendant and gather evidence against him, but rather to remove him from the highway and prevent a fatal accident.[9]

Under the governing standard of review, the motion judge's subsidiary findings are free of clear error and her ultimate findings and conclusions of law satisfy the requirements of the concept of lawful inevitable discovery imposed by art. 14.[10] Zaccardi acted to avert a grave highway accident. His lawful dispatch communications set in motion the encounter of the defendant by the Attleboro police. The governing formulation calls for discovery to a degree of practical certainty, not absolute certainty. The evidence satisfies that test.

2. *Renewal motion.* Pursuant to Mass.R.Crim.P. 13(a)(5), as appearing in 442 Mass. 1516 (2004),[11] the defendant moved

---

[9]Officer Zaccardi testified that, after his near collision, he "was afraid this vehicle was going to kill somebody," and that he took the defendant's keys to prevent his return to the road. On appeal, the defendant has not challenged Officer Zaccardi's motive.

[10]Our holding rests upon the events found by the motion judge, and specifically the causal force of the lawful dispatch communications from Officer Zaccardi to the Attleboro police. We do not reach the Commonwealth's proposal that we analyze the case upon the hypothetical alternative that Officer Zaccardi could have followed the defendant's car without use of his lights and siren until the interception by the Attleboro police.

[11]That subsection in relevant part provides: "Upon a showing that substantial justice requires, the judge . . . may permit a pretrial motion which has been heard and denied to be renewed."

before trial to renew his failed motion to suppress by reason of newly discovered evidence in the audio turret tape of Officer Zaccardi's communications to Norton dispatch during the pursuit. The parties agree that the standard of review for a rule 13(a)(5) denial is abuse of discretion. See *Commonwealth* v. *Haskell,* 438 Mass. 790, 792-793 (2003) (renewal is appropriate for new or additional grounds not reasonably knowable at the time of the submission of the original motion; and for other unspecified circumstances). Abuse of discretion is a demanding standard. It usually requires the conclusion "that no conscientious judge, acting intelligently, could honestly have taken the view expressed by [her]." *Commonwealth* v. *Medeiros,* 395 Mass. 336, 351 (1985), quoting from *Commonwealth* v. *Bys,* 370 Mass. 350, 361 (1976).

Here, neither of the grounds cited by the judge would amount to an abuse of discretion. The defendant submitted his motion to suppress on or about June 18, 2008, or almost six months after his arrest. He did not move for production of the tape until July 21, 2008, almost seven months after arrest. Meanwhile, the judge conducted evidentiary hearings on July 23 and 31, 2008. At neither one did defense counsel propose a continuance until production. The Commonwealth produced the turret tape on August 18, 2008, or within a month after request. The judge delivered her order on the suppression motion on or about October 3, 2008. However, successor defense counsel did not submit the motion to renew until May 27, 2009, more than nine months after production and almost eight months after the judge's decision and only five weeks before trial. In short, the tape contents were readily discoverable for use in the original motion. The renewal motion was extraordinarily late; the pattern of untimeliness justified denial.

As a matter of caution, we have examined the transcript of the tape (included in the record appendix by agreement of the parties). The defendant maintains that it shows that as much as five minutes may have intervened between Zaccardi's stop of the defendant and the Attleboro cruiser's arrival. We cannot agree.

The contents of the tape are brief and somewhat elliptical. They cover a period of twelve minutes and twenty-two seconds, but consist of only one page. The tape appears to begin at the

start of the pursuit. The defendant emphasizes a sentence by Officer Zaccardi at five minutes, thirty-two seconds, when he informs Norton dispatch that an Attleboro car is present at the stop scene. That sentence does not report the time of the arrival of that car. Another sentence at two minutes, eighteen seconds, indicates that an Attleboro unit may be present with him. These ambiguities would not infect the judge's subsidiary findings with clear error.

At the same time, some entries in the tape would strengthen the demonstration of inevitable discovery and apprehension of the defendant by the Attleboro police. At the twenty-second mark of the tape, Officer Zaccardi informs dispatch of the defendant's license plate number, a vital identification likely passing to the Attleboro police several seconds later. At the twenty-two second mark, Zaccardi informs dispatch of the specific buildings which he is passing as he travels westward along route 123 and farther into Attleboro. Thus Attleboro cruisers would know promptly of the direction, location, and license number of the defendant's car. Each of those elements would strengthen the practical certainty of his discovery.

In short, the tape contents would not undermine the validity of the judge's subsidiary and ultimate findings or conclusion of law. Substantial justice did not require allowance of the motion to renew. No abuse of discretion occurred.

*Judgments affirmed.*