NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1021                                      Appeals Court


COMMONWEALTH  vs.  GIOVANNIE LUNA.


No. 16-P-1021.

Hampden.     October 2, 2017. - December 5, 2017.

Present: Vuono, Meade, & Kinder, JJ.


Controlled Substances. Firearms. Practice, Criminal, Motion to
    suppress. Probable Cause. Search and Seizure, Probable
    cause, Motor vehicle, Inevitable discovery. Constitutional
    Law, Probable cause, Search and seizure.


    Indictments found and returned in the Superior Court
Department on May 12, 2015.

    A pretrial motion to suppress evidence was heard by Edward
J. McDonough, Jr., J.

    An application for leave to prosecute an interlocutory
appeal was allowed by Barbara A. Lenk, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.

    James R. Goodhines for the defendant.
    Benjamin Shorey, Assistant District Attorney, for the
Commonwealth.


    KINDER, J.  The defendant has been charged with various

narcotics and firearm offenses.  Following an evidentiary

hearing, a Superior Court judge denied, in large part, the

defendant's motion to suppress evidence.  The defendant's application to pursue an interlocutory appeal was allowed by a single justice of the Supreme Judicial Court, who reported the matter to this court.

On appeal, the defendant claims that (1) the judge erred in concluding that the Springfield police officers had reasonable suspicion to stop the defendant's vehicle and to pat frisk him, (2) the subsequent warrantless search and seizure of heroin and a firearm from a second motor vehicle was not supported by probable cause or any exception to the warrant requirement, and (3) the police officers lacked authority to conduct the second search outside the city of Springfield.  Because we conclude that the Springfield police exceeded their territorial jurisdiction in the execution of the second vehicle search, we reverse so much of the order as denied the motion to suppress evidence seized during that search.

Background.  We summarize the pertinent facts from the judge's findings on the motion to suppress, supplemented where appropriate by uncontroverted suppression hearing testimony that the judge explicitly or implicitly credited.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  In April of 2015, Springfield police Officer Jaime Bruno, a narcotics investigator with fifteen years' experience, was told by a confidential informant that on April 15, 2015, an individual named "Gio,"

later identified as the defendant, would make a large delivery of heroin at the intersection of Liberty Street and Denton Circle in East Springfield at about noon that day. According to the informant, Gio would be driving a black Mini Cooper automobile, and the informant provided the license plate number. The informant, with whom Officer Bruno had been in "constant communication" for the preceding seven to eight months, had previously provided information to Officer Bruno that resulted in numerous seizures and arrests. The informant told Officer Bruno that he[1] had purchased heroin from Gio at that same intersection on several occasions, and also within the last seventy-two hours at Gio's residence at the Toll House Apartments in West Springfield. Other officers confirmed that the defendant lived at the Toll House Apartments, and informed Officer Bruno that the defendant also had a residence at 122 Beauregard Terrace in Chicopee.

The Springfield police had previously received complaints that nonresidents of the area were congregating at the intersection of Liberty Street and Denton Circle. On the morning of April 15, 2015, Officer Bruno went to that location to see for himself. He observed two individuals standing at the

---

[1] Although the gender of the informant is not disclosed, we use the masculine pronoun for ease of reference.

intersection whom he had previously arrested for heroin offenses.

Later that morning, at approximately 10:00 A.M., surveillance officers observed the defendant and a Hispanic male leave the Toll House Apartments, place two large plastic containers in the back seat of the Mini Cooper, and drive it to 122 Beauregard Terrace in Chicopee. There, the defendant approached a red Honda automobile parked at the end of the driveway, opened the trunk with a key, and retrieved a black plastic bag the size of a softball. He then reentered the Mini Cooper and drove in the direction of East Springfield.

The police followed in unmarked vehicles. When the Mini Cooper was within approximately two miles of the intersection of Liberty Street and Denton Circle, the defendant began driving in an erratic manner. He drove up and down a number of side streets with no apparent destination, suddenly stopping and then accelerating beyond the speed limit. This unusual driving caused Officer Bruno, based on his training and experience, to conclude that the defendant was attempting to determine if he was being followed.

The police stopped the Mini Cooper. Officer Bruno removed the defendant and conducted a patfrisk for weapons. He felt a large bulge in the defendant's pocket, which he recognized, based on his experience and the size and texture of the objects,

as packets of heroin. He then removed a black bag from the defendant's pocket, which appeared to be the one he had observed the defendant remove from the trunk of the red Honda. Officer Bruno also removed a set of Honda car keys and three cellular telephones from the defendant's person.

The defendant was arrested. The defendant pleaded with Officer Bruno for permission to telephone his girl friend; Officer Bruno declined. Within minutes of the arrest, all three cellular telephones seized from the defendant began to ring and the unanswered calls continued for approximately ten minutes. Concerned the delay in the defendant's arrival had alerted those waiting for the delivery of heroin to a potential problem such that the investigation had been compromised, Officer Bruno and other officers returned to 122 Beauregard Terrace in Chicopee, arriving within ten to fifteen minutes of the defendant's arrest. When, after five minutes, no one responded to Officer Bruno's announcement of police presence and knocks on two different doors, officers entered the Honda using the keys obtained from the defendant. Several bricks of heroin and a firearm were seized from the trunk.

Prior to the vehicle search, Officer Bruno had requested that Chicopee police officers provide a "'uniformed' police presence at the scene given that the Springfield police officers were in plain clothes in unmarked vehicles and they might not be

recognized as law enforcement." Chicopee police officers did not arrive until after the search of the Honda.

Discussion. We review the judge's decision under familiar standards. We accept the judge's factual findings unless they are clearly erroneous. See Commonwealth v. Meneus, 476 Mass. 231, 234 (2017). However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Durand, 475 Mass. 657, 664 (2016), cert. denied, 86 U.S.L.W. 3156 (2017), quoting from Commonwealth v. Bostock, 450 Mass. 616, 619 (2008).

1. The vehicle stop and arrest in Springfield. The defendant claims that the heroin found in his pocket should have been suppressed because the stop of the Mini Cooper was not supported by reasonable suspicion. We disagree. A stop is justified when police have a reasonable suspicion that the person stopped is committing, has committed, or is about to commit a crime. Commonwealth v. Silva, 366 Mass. 402, 405 (1974). The reasonable suspicion must be based on "specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience." Id. at 406. When the stop is based on an unnamed informant's tip, as in this case, "art. 14 requires that the information satisfy the two-pronged standard set forth in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410

(1969)."  Commonwealth v. Welch, 420 Mass. 646, 650 (1995). The Commonwealth must demonstrate the veracity of the informant and his basis of knowledge.  Ibid.  "Independent police corroboration may make up for deficiencies in one or both of these factors."  Commonwealth v. Mubdi, 456 Mass. 385, 396 (2010) (quotation omitted).

An informant's veracity may be shown by "underlying circumstances from which . . . the law enforcement officials could have concluded the informant was credible or reliable." Commonwealth v. Escalera, 462 Mass. 636, 645 n.8 (2012), quoting from Commonwealth v. Cast, 407 Mass. 891, 896 (1990).  Here, the informant had a proven track record.  He had provided information to Officer Bruno on more than fifty prior occasions in the preceding seven to eight months.  The information provided by the informant led to "well over fifteen" seizures of drugs, resulting in multiple convictions.  We agree with the judge's conclusion that this evidence sufficiently established the informant's veracity.  See Commonwealth v. Robinson, 403 Mass. 163, 165 (1988) ("The informant's past record of supplying credible information satisfies the reliability prong").

As to the second prong of the Aguilar-Spinelli standard, a prior purchase of drugs by an informant can satisfy the basis of knowledge test.  Commonwealth v. Montanez, 410 Mass. 290, 299-300 (1991).  See Commonwealth v. Ilges, 64 Mass. App. Ct. 503,

508 (2005).  Here, the informant reported that he had purchased heroin on several occasions from the defendant, whom he knew by name, both at the intersection of Liberty Street and Denton Circle, and also at the defendant's residence, which he identified by address.  Moreover, it was reasonable to infer from the informant's detailed information that he had direct personal knowledge of the defendant's heroin distribution.  See Commonwealth v. Mendes, 463 Mass. 353, 365 (2012) (level of detail in informant's description consistent with firsthand knowledge).  He described a transaction that was to occur at a specific intersection at a definite time and reported the make, color, and license plate number of the vehicle the defendant would be driving.  Independent police investigation confirmed that the defendant lived at the address provided by the informant, and had a second address in Chicopee.  Police also confirmed that the Mini Cooper described by the informant was registered to the defendant's girl friend.

The information provided by the informant was further corroborated when, approximately one hour before the drug transaction was to occur, police observed the defendant leave the Toll House Apartments in the Mini Cooper, drive to his residence at 122 Beauregard Terrace in Chicopee, take a softball-sized black bag from the Honda, and then drive in the direction of the transaction predicted by the informant.  While

following the defendant, the police reasonably concluded that he was engaged in counter surveillance as he drove evasively through a residential neighborhood.  In these circumstances, the judge correctly concluded that the police had more than reasonable suspicion to stop the defendant -- they had probable cause to arrest him.

"[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Commonwealth v. Charley, 91 Mass. App. Ct. 223, 228 (2017), quoting from Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980).  We consider the entire "silent movie" in a practical and nontechnical way, through the eyes of an experienced narcotics investigator.  Commonwealth v. Santaliz, 413 Mass. 238, 242 (1992).  Applying these principles, we conclude that the information received from the informant, corroborated by police investigation and the defendant's attempts to evade surveillance, established probable cause that he was committing a drug offense.  Because the police had probable cause to arrest the defendant at the time they stopped the Mini Cooper, the search of the defendant's person was

permissible incident to that lawful arrest.  See Commonwealth v. Blevines, 438 Mass. 604, 608 (2003).[2]

2.  Search of the Honda in Chicopee.  The defendant challenges the warrantless search of the Honda in Chicopee on multiple grounds.  Because we agree with the defendant that, in the circumstances presented here, the Springfield police lacked authority to conduct a warrantless vehicle search outside their jurisdiction, we limit our discussion to that issue.[3]

It is well settled that "[a] police officer lacks authority to act outside his or her jurisdiction, unless specifically authorized by statute or in the performance of a valid citizen's arrest at common law."  Commonwealth v. Twombly, 435 Mass. 440, 442 (2001).  The Commonwealth argues that the police had statutory authorization here.  Specifically, the Commonwealth cites G. L. c. 276, § 2A, for the proposition that searches can be broadly executed by any State, county, or local law enforcement officer.[4]  While it is true that G. L. c. 276, § 2A,

---

[2] Because we conclude that the police had probable cause to arrest the defendant, and the search of his person was incident to that lawful arrest, we need not address the defendant's arguments related to the exit order and the patfrisk of his person.

[3] The defendant also argues that the police lacked probable cause to search the Honda and that there were no exigent circumstances justifying the warrantless search.

[4] General Laws c. 276, § 2A, entitled "Form of warrant," provides that search warrants issued by courts "shall be in

implicitly authorizes any Massachusetts law enforcement officer to execute search warrants anywhere in the Commonwealth, the clear language of the statute applies only to searches executed pursuant to a warrant.  It does not apply to warrantless searches like the one in this case.  The Commonwealth cites no authority, and we have found none, permitting a warrantless search by a Massachusetts police officer acting outside his territorial jurisdiction.

Here, it is undisputed that the warrantless search of the Honda was conducted by the Springfield police in the city of Chicopee, outside the territorial jurisdiction of the Springfield police department.  Although the Chicopee police were called for assistance, they were not involved in the investigation and were not present at the time the search was conducted.  Thus, the Springfield police acted outside their authority, and the contraband seized from the Honda in Chicopee should have been suppressed.  See Commonwealth v. Lahey, 80 Mass. App. Ct. 606, 610 (2011) ("The appropriate remedy for unauthorized extraterritorial action is suppression of the resulting evidence").

---

substantially the following form: . . . . To the Sheriffs of our several counties, or their deputies, any State Police Officer, or any Constable or Police Officer of any city or town, within our said Commonwealth . . . [we] command you . . . to make an immediate search . . . ."  G. L. c. 276, § 2A, inserted by St. 1964, c. 557, § 3.

For the first time on appeal, the Commonwealth argues that even if the police exceeded their territorial authority, the exclusionary rule should not apply because the evidence seized from the Honda would have inevitably been discovered. The Commonwealth's theory of inevitable discovery is that the Chicopee police, upon their arrival, would have conducted a lawful search of the Honda within their territorial jurisdiction. We are not persuaded.

"[T]he Commonwealth has the burden of proving the facts bearing on inevitability by a preponderance of the evidence." Commonwealth v. Ubilez, 88 Mass. App. Ct. 814, 817-818 (2016), quoting from Commonwealth v. Perrot, 407 Mass. 539, 547 (1990). "The motion judge's findings [on inevitable discovery] should be specific and detailed." Lahey, supra at 613. "Once the relevant facts are found by a preponderance of the evidence, the question is whether on those facts discovery by lawful means was certain as a practical matter." Commonwealth v. O'Connor, 406 Mass. 112, 117 (1989). "The test of inevitability should be made on the circumstances existing at the time of the unlawful seizure." Id. at 117 n.4.

Even assuming there was a lawful basis to search the Honda without a warrant,[5] a question we do not reach, we cannot

_____

[5] The Commonwealth contends there was probable cause to search the Honda and exigent circumstances justifying a

conclude that a lawful search by the Chicopee police was "virtually certain." Perrot, supra. Indeed, at the time the search was conducted by the Springfield police, even the arrival of the Chicopee police, although anticipated, was not certain. Moreover, because the theory of inevitable discovery was not advanced at the suppression hearing, the Commonwealth did not elicit testimony to support it, and the judge's comprehensive memorandum of decision included no findings related to inevitable discovery. Accordingly, on the record before us, we cannot conclude that "discovery by lawful means was certain as a practical matter." O'Connor, supra.

Conclusion. So much of the order as denied the defendant's motion to suppress evidence seized from the Honda in Chicopee is reversed. In all other respects, the order is affirmed.

So ordered.

---

warrantless search. The Commonwealth also argues that the automobile exception should apply in these circumstances even though the Honda was parked on private property. We note that the Supreme Judicial Court "ha[s] not previously addressed whether the automobile exception to the warrant requirement may justify a search of an automobile parked within the curtilage of a defendant's home." Commonwealth v. Fernandez, 458 Mass. 137, 146 n.13 (2010).