COMMONWEALTH vs. KENNETH P. STATHOPOULOS.

Middlesex.    November 6, 1986. — December 30, 1986.

Present: GRANT, QUIRICO, & FINE, JJ.

*Practice, Criminal,* Instructions to jury, Presumptions and burden of proof.
*Motor Vehicle,* Operating under the influence, Operating to endanger.
*Statute,* Construction.

At the trial of a complaint charging operation of a motor vehicle while
under the influence of intoxicating liquor and a complaint charging
operation of a motor vehicle while under the influence of narcotic drugs,
there was reversible error in the judge's instructions to the jury that they
could convict the defendant of operating under the influence of intoxi-
cating liquor if they were to find that the defendant's ability to operate
safely had been impaired by a mixture of alcohol and a narcotic drug.
[288-291] FINE, J., dissenting.

Where, at the trial of a defendant charged with operating a motor vehicle
negligently so that the lives or safety of the public might be endangered,
the judge in his instructions a number of times properly defined the
offense with respect to the lives or safety of the public, no substantial
risk of a miscarriage of justice was created as a result of the judge's
including at one point in the charge the expression that "the circumstances
should be such that an operator of a motor vehicle should realize that
his conduct in operating his vehicle is likely to create an unreasonable
risk or high probability of harm either to himself or to others." [291-292]

On appeal from convictions of motor vehicle violations, there was no merit
to the defendant's claims of error respecting the judge's instructions on
the Commonwealth's burden of proof beyond a reasonable doubt.
[292]


COMPLAINTS received and sworn to in the Somerville Divi-
sion of the District Court Department on August 28 and Sep-
tember 14, 1984.

On appeal to the jury session of the Cambridge Division,
the cases were tried before *Arthur Sherman,* J.

*Richard B. Klibaner* for the defendant.

*Emily J. Gould,* Assistant District Attorney, for the Com-
monwealth.

GRANT, J. Three complaints were issued out of a District Court variously charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor (third offence) (G. L. c. 90, § 24[1][a][1], as appearing in St. 1982, c. 373, § 2[1]), operating a motor vehicle while under the influence of narcotic drugs (same statute), and operating a motor vehicle negligently so that the lives or safety of the public might be endangered (G. L. c. 90, § 24[2][a], as most recently amended by St. 1975, c. 156, § 1[2]). Following a bench trial, the defendant was acquitted of operating under the influence of narcotic drugs but convicted on the other two charges. He appealed for a trial de novo by a jury of six, only to be convicted again on both charges. He has now appealed to this court. All the questions which have been argued are addressed to various aspects of the charge. A brief synopsis of the evidence will serve to place the significant questions in perspective. There was evidence from which the jury could have found the following facts.[3]

At approximately 3:20 A.M. on August 28, 1984, a Metropolitan District Commission police officer observed the defendant driving a jeep at a speed of from fifty to sixty miles per hour through two successive red lights on Washington Street in Somerville between Union Square and the Charlestown district of Boston. When stopped by the officer, the defendant resisted arrest. The odor of alcohol was on his breath; he displayed most of the classic symptoms of intoxication; and he fared badly on five separate field sobriety tests, two of them conducted at the scene of the arrest and three of them at the

---

[1] "Whoever, upon any way or in any place to which the public has a right of access . . . operates a motor vehicle while under the influence of intoxicating liquor, or of marihuana, narcotic drugs, depressants or stimulant substances, all as defined in section one of chapter ninety-four C . . . shall be punished. . . ."

[2] "Whoever upon any way or in any place to which the public has a right of access . . . operates a motor vehicle . . . negligently so that the lives or safety of the public might be endangered . . . shall be punished. . . ."

[3] It was stipulated at the outset of the trial that the way in question was a public way within the meaning of G. L. c. 90, § 24(1) (a) (1) and (2) (a).

Lower Basin police station. A postarrest search of the defendant yielded five yellow pills which, on later chemical analysis, were determined to contain phencyclidine (PCP), a Class B controlled substance. The defendant attempted without success to recover and swallow the pills, became violent, had to be restrained by leg irons as well as handcuffs, and was taken to Massachusetts General Hospital for several hours of observation.

At some point the defendant was given a breathalyzer test, which showed a blood alcohol content by weight of .07 percent. G. L. c. 90, § 24(1) (*e*). The officer who had performed the test expressed the opinions (on cross examination) that the .07 reading was inconsistent with the irrational behavior which the defendant had exhibited in the police station and that the defendant had been under the influence of a combination of alcohol and "something else." Such of the pills as had not been consumed in the course of the chemical analysis, together with a certificate of the results of the analysis, were admitted in evidence, supposedly for the limited purpose of explaining the defendant's conduct in the police station.

1. The judge explained to the jury at the outset of the case, in some preliminary instructions which he gave prior to the prosecutor's opening statement, that "[a] person is under the influence of intoxicating liquor if at the time of his consumption and as a result of his consumption of alcoholic beverages, his ability to operate a motor vehicle safely has been reduced, diminished." That remark was grounded on the holding in *Commonwealth* v. *Connolly,* 394 Mass. 169 (1985), which had been decided some two months prior to the trial of this case.[4] There the court held: "[I]n a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely. The Commonwealth need not prove that the defendant *actually drove* in an unsafe or

---

[4] The trial judge in this case had been the trial judge in the *Connolly* case.

erratic manner, but it must prove a diminished *capacity* to operate safely" (emphasis in original). 394 Mass. at 173. The charge in the instant case contained several other unexceptionable instructions based on the *Connolly* case. They were followed by two further instructions, to which the defendant duly objected. The first was: "If you find that the alcohol which the defendant may have ingested alone did not render him under the influence of intoxicating liquor, but the mixture, but the mixture of that alcohol with a drug, a controlled substance, did diminish his capacity to operate safely, you are warranted in finding him guilty of operating under the influence of intoxicating beverages." Somewhat later, in the course of explaining the significance of the .07 reading on the breathalyzer, the judge said: "This reading which . . . was introduced . . . shows a .07 . . . [T]hat's not evidence of the fact that he was under the influence. It is evidence that he ingested alcohol. Whether that alcohol was mixed with something else, so as to then render him under the influence, that is for you to determine, and for you only."

The evidence in this case and the challenged instructions illustrate a recurring problem not previously addressed by either of our appellate courts, namely what instructions should be given on an indictment or complaint for driving under the influence of intoxicating liquor when there is evidence from which the jury could find that the defendant has ingested not only alcohol but also a narcotic drug or one of the other substances proscribed by G. L. c. 90, § 24(1) (*a*) (1). Our starting point is the statute itself. It sets out separate and distinct offences when it provides in the disjunctive that "[w]hoever . . . operates a motor vehicle while under the influence of intoxicating liquor, *or* of marihuana, narcotic drugs, depressants *or* stimulant substances . . . shall be punished . . ." (emphasis supplied). The Commonwealth recognized the truth of that proposition when it sought and received separate complaints against the defendant for operating under the influence of intoxicating liquor and operating under the influence of narcotic drugs. Our statute, unlike those in many other States, contains no such thing as a "combined offense" of operating under the influence of intox-

icating liquor *and* drugs. See 1 Erwin, Defense of Drunk Driving Cases § 1.07[5] [a] & n.1, and the appendix referred to therein (3d ed. 1986). Any effort to read our statute as providing for that type of offence would suffer from constitutional infirmity. See *Commonwealth* v. *Gagnon,* 387 Mass. 567, 569, modified on other grounds, 387 Mass. 768 (1982), cert. denied, 461 U.S. 911 and 464 U.S. 815 (1983); *Commonwealth* v. *Connolly,* 394 Mass. at 174.

We think the only instruction which may properly be given a jury in a case such as the present is one to the effect that, although they may find that the defendant had ingested a narcotic or other proscribed substance which may have rendered him more susceptible to the intoxicating effect of liquor, they cannot convict unless they also find beyond a reasonable doubt that the liquor was the efficient cause of the intoxication and that such intoxication resulted in diminishing the defendant's ability or capacity to operate a motor vehicle safely. See, e.g., *Commonwealth* v. *Rex,* 168 Pa. Super. 628, 631, 632 (1951); *Kessler* v. *State,* 136 Tex. Crim. 340, 342 (1938); *Baker* v. *State,* 172 Tex. Crim. 21, 23 (1962); *Heard* v. *State,* 665 S.W. 2d 488, 489-490 (Tex. Crim. App. 1984). That is not the message conveyed by the portions of the charge now under consideration. The judge twice told the jury they could convict the defendant if they were to find that his capacity to operate safely had been impaired by a mixture of alcohol and a drug.[5] The difficulty is not to be rationalized by pointing to the notion prevalent in some other jurisdictions having statutory provisions similar to ours that, if one is under the influence of a mixture of intoxicating liquor and drugs, he is necessarily under the influence of liquor. See, e.g., *State* v. *Thomas,* 79 Idaho 372, 376 (1957); *State* v. *Blier,* 330 A.2d 122, 123 (Me. 1974); *State* v. *West,* 416 A.2d 5, 9 (Me. 1980); *Harrell* v. *Norfolk,* 180 Va. 27, 34 (1942) ("[I]t must be conceded that if the defendant was under the influence of *both the whiskey*

---

[5] We have already pointed out that driving under the influence of a mixture of alcohol and one of the proscribed substances is not, by itself, an offence under our law.

*and the pills,* he undoubtedly was under the influence of the whiskey"; emphasis in original). On a parity of reasoning, a person who operates under the influence of a mixture of liquor and drugs is operating under the influence of drugs, which is the very offence of which this defendant was acquitted at his bench trial.

We have no doubt that the instructions given on this aspect of the case were erroneous. When considered in light of the evidence, the instructions were such that the jury could very well have understood that they could properly convict the defendant on finding that he had operated while intoxicated by a mixture of alcohol and drugs without pausing to consider whether the alcohol was the efficient cause of the intoxication. See *Commonwealth* v. *Moreira,* 385 Mass. 792, 796 (1982) ("The test is what a reasonable juror *could* have understood the charge to mean, not what he was likely to understand"; emphasis in original). The instructions were the last ones the jury heard on the subject of intoxication. See *Commonwealth* v. *Pickles,* 393 Mass. 775, 778-779 (1985); *Commonwealth* v. *Sullivan,* 20 Mass. App. Ct. 802, 807 (1985). We are unable to conclude that the error was harmless.

2. Once in his preliminary instructions at the outset of the case and four times in his charge the judge properly defined the offence of driving negligently in terms of whether the lives or safety of the public might have been endangered (e.g., "so that the lives and safety of the public might — not that they were — might have been endangered"). On his fifth trip around the bases the judge said, among other things, that "[o]ur law contemplates that the circumstances should be such that an operator of a motor vehicle should realize that his conduct in operating his vehicle is likely to create an unreasonable risk or high probability of harm either to *himself* or to others" (emphasis supplied). Stripped of its constitutional verbiage, the defendant's argument is that the judge instructed the jury that they could find the defendant guilty without finding that he might have endangered the lives or safety of the public.

We think the defendant has missed the thrust of the quoted passage. It strikes us that it was directed to the question whether

the defendant had operated negligently within the meaning of G. L. c. 90, § 24(2)(*a*), rather than the question of whose life or safety might have been endangered in the process. Compare *Commonwealth* v. *Glowski,* 15 Mass. App. Ct. 912 (1982) (vehicular homicide under G. L. c. 90, § 24G). It was open to the jury to find that the defendant, while under the influence of alcohol, had driven a jeep at an unreasonable rate of speed through red lights at two successive intersections and so had operated negligently within the meaning of the statute. See *Commonwealth* v. *Campbell,* 394 Mass. 77, 83 (1985). There was no objection at trial, so we confine our consideration to whether the instruction created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Murray,* 396 Mass. 702, 710 (1986). We see no such risk.

3. The defendant asserts several deficiencies in the portions of the charge devoted to the Commonwealth's burden of proof beyond a reasonable doubt. We need make but two observations. First, each of the asserted deficiencies (some of them in more pronounced form) appeared in the charge given by the same judge which passed muster in *Commonwealth* v. *Sheline,* 391 Mass. 279, 291-297 (1984). Second, having charged on the burden of proof in general terms, the judge was not required to restate that burden in the course of defining the various elements of each offence. See *Commonwealth* v. *Diaz,* 19 Mass. App. Ct. 29, 38 (1984), and cases cited.

The judgment on no. JR-84-1515S-a is affirmed; the judgment on no. JR-84-1515S is reversed, and the verdict on that complaint is set aside.

*So ordered.*

FINE, J. (dissenting). I part company with the majority only on the first point, the adequacy of the jury instructions on the offense of operating while under the influence of intoxicating liquor. I agree that for a jury to find a defendant guilty of that offense they must find a causal relationship between the inges-

tion of alcohol and the intoxication. In my view, however, the judge's instructions adequately conveyed that notion to the jury. Repeatedly he said that to find the defendant guilty they must be convinced that the defendant's consumption of alcohol diminished his capacity to drive. The failure to use the specific term "efficient cause" does not seem to me to be significant. The reference in the charge to a "mixture" of substances was not improper. If, given the evidence in the case, the judge had not said something to the effect that a guilty verdict was warranted if a mixture of drugs and alcohol diminished the defendant's capacity, he would have left the jurors in a state of confusion. I would therefore affirm the conviction of driving under the influence.