COMMONWEALTH *vs.* JAMES DUFFY. No. 03-P-1201. November 19, 2004. *Motor Vehicle,* Operating to endanger. *Practice, Criminal,* Instructions to jury, Argument by prosecutor.

On June 19, 2002, a criminal complaint issued against the defendant charging him with negligent operation of a motor vehicle, racing a motor vehicle, and speeding. After a trial, the jury returned a guilty verdict on the negligent operation charge, and not guilty on the racing offense. The judge found the defendant responsible for the speeding offense and assessed a fine. The defendant was sentenced to two years in a house of correction on the negligent operation conviction.

On appeal, the defendant claims that the judge committed error in (1) denying the defendant's motion for required finding of not guilty on the negligent operation offense; (2) admitting evidence of an accident involving another party; and (3) instructing the jury incorrectly on negligence. The defendant also claims that the prosecutor made improper comments in his closing argument.

1. *Denial of motion for required findings of not guilty.* To establish guilt under the driving to endanger statute, G. L. c. 90, § 24(2)(*a*), the Commonwealth must prove that the defendant (1) operated a motor vehicle, (2) upon a public way, (3) (recklessly or) negligently so that the lives or safety of the public might be endangered.[1] See *Commonwealth* v. *Jones*, 382 Mass. 387, 392 (1981). The defendant claims that there was a failure of proof as to the third factor — that he had operated a motor vehicle negligently so that the lives and safety of the public might be endangered.

The evidence viewed in the light most favorable to the Commonwealth shows that in the latter part of the afternoon on Memorial Day, May 27, 2002, Richard Hall was in his yard, grilling food. Hall had lived in the same house on High Street for approximately sixteen years. He described the neighborhood as a thickly settled one, located about seven-tenths of a mile from the center of town. From his house, Hall could see on High Street a distance of about 150 yards east to a curve in the road, and about 250 yards west, where the road veered sharply to the left. At least two streets intersected High Street between Hall's house and the sharp left turn to the west. There were no sidewalks or curbs on this portion of the street; rather, it abutted the lawns of

---

[1]The court in *Commonwealth* v. *Jones*, 382 Mass. 387, 392 (1981), recognized "that by custom and usage the element of 'recklessness' has been of little or no significance in the application of the operating to endanger statute" and therefore, "the statutory word 'recklessly' seems to be surplusage."

Rescript Opinions.

the adjoining property owners. The posted speed limit was thirty miles per hour.

Hall's attention was drawn to the noise made by a group of motorcycles that sounded as though they were accelerating toward his house. Because Hall had owned thirteen motorcycles over the course of his life, he walked to the end of his driveway to see if he could see the vehicles. Three motorcycles came within Hall's view as they rounded the curve to east of his house, then traveled single file on High Street, past Hall's location and headed west, around the sharp left turn. Hall described the first motorcycle in line as an older Japanese model that was red or burgundy in color and the second and third motorcycles as smaller racing style bikes that were yellow and blue, respectively. Hall estimated their speed to be about sixty to seventy miles per hour as they traveled the approximately 400 yards of High Street that he could see from the front of his house, slowing only as they took the sharp left turn at the western end. According to Hall, each motorcycle slowed to what appeared to be speeds below the limit as they took the left turn. Once out of Hall's sight, he again heard them accelerating.

About ten minutes later, Hall heard the sound of police sirens passing his house, in the direction he had last seen the motorcycles traveling. Hall drove around the corner and saw the three motorcycles. The blue motorcycle appeared to have struck a rock and the rider appeared to have been seriously injured. Hall identified the defendant as one of the individuals at the scene.

Officer Thomas McCafferty of the North Attleboro police department was dispatched to the scene, where he spoke to the defendant. The defendant told him that the operator of the blue motorcycle had passed his motorcycle at a speed of between sixty-five and seventy-five miles per hour, lost control, and crashed.

The issue on appeal is whether the defendant operated his motor vehicle negligently so that the lives or safety of the public might be endangered. Excessive speed, by itself, does not mandate such a finding, but it can be considered in combination with other evidence, in determining whether the defendant's operation constituted negligent operation. *Commonwealth* v. *Campbell*, 394 Mass. 77, 83 n.5 (1985) ("violation of a statute, such as the one governing the speed limit, is not negligence per se, [but] can validly be considered, in combination with other evidence, in determining negligence").[2]

Here, there is evidence the defendant's speed was not merely over the posted limit, but was more than twice that permitted on the road he was traveling. See *Connors* v. *Boland*, 282 Mass. 518, 522 (1933) ("To drive a motor vehicle upon the public ways of this Commonwealth at a speed which would endanger the life or safety of its occupants might be found to be gross negligence even in the absence of other unfavorable conditions"). In addition, the defendant was speeding through a thickly settled neighborhood on a holiday afternoon. There were no curbs to restrain any vehicle from going off the road. Thus, when the defendant's speed is viewed in relation to the time and place that he was traveling, the risk it posed to the lives and safety of the

[2]Negligence in this context is determined by the same standard that is employed in tort law. See *Commonwealth* v. *Geisler*, 14 Mass. App. Ct. 268, 276 (1982); *Commonwealth* v. *Berggren*, 398 Mass. 338, 340 (1986); *Aucella* v. *Commonwealth*, 406 Mass. 415, 418-419 (1990).

public becomes clear. Because the defendant was traveling at such a high rate of speed, his ability to control his motorcycle was significantly impaired, increasing the risk that he would lose control of the motorcycle and decreasing his ability to respond to the actions, unexpected or otherwise, of the visitors, residents, and other motor vehicle operators that were likely to be in the thickly settled neighborhood on a holiday afternoon in May. We conclude that there is ample evidence to support the denial of the defendant's motion for a required finding where the statute only requires proof that the lives or safety of the public might be endangered, not that they are endangered. See *Commonwealth* v. *Stathopoulos*, 23 Mass. App. Ct. 286, 291-292 (1986) (judge properly defined "driving negligently in terms of whether the lives or safety of the public might have been endangered" — not that they were endangered).[3]

2. *Evidence of the accident.* The defendant argues that the admission of evidence related to the accident involving the other operator of the blue motorcycle was prejudicial to him and therefore error. At trial, the defendant objected to evidence that one of the other riders had passed him and crashed, which the Commonwealth argued were facts relevant to the racing charge. We conclude that there was no error. Furthermore, even if the court were to assume that the admission of the evidence pertaining to the accident was error, it was obviously not unduly prejudicial given the defendant's acquittal on the charge to which it most directly related. See *Commonwealth* v. *Sosnowski*, 43 Mass. App. Ct. 367, 372 (1997) ("difficult to find that the admission of the evidence caused prejudice" where defendant was acquitted on two of three indictments).

3. *Jury instructions.* The defendant argues that the judge's instructions to the jury were improper because they did not inform the jury that they must find the defendant's actions caused another individual's accident and injuries. Negligent operation of a motor vehicle only requires proof that the defendant operated "negligently so that the lives or safety of the public *might* be endangered . . . ." (emphasis added). G. L. c. 90, § 24(2)(*a*), as appearing in St. 1975, c. 156, § 1. The judge properly instructed in accordance with the statutory requirement, more was not required. See *Commonwealth* v. *Stathopoulos*, 23 Mass. App. Ct. at 291-292.

4. *Prosecutor's closing argument.* " '[P]rosecutors are entitled to marshal the evidence and suggest inferences that the jury may draw from it.' The inferences suggested by the prosecutor need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Dinkins*, 415 Mass. 715, 725 (1993) (citation omitted). Thus, there was no error when the prosecutor urged the jury to consider the evidence that the motorcyclist who

---

[3]In *Commonwealth* v. *Twombly*, 435 Mass. 440, 444 (2001), the court suggests, without deciding, that the defendant's speed of fifty to fifty-five miles per hour on a roadway with a posted limit of twenty-five miles per hour on the off-ramp and thirty-five miles per hour on Route 110, at a time when there was moderate traffic, and his subsequent slowing of his vehicle to the speed limit in order to pass in a no-passing lane did not constitute driving to endanger.

In the case at bar, however, the defendant was traveling at a significantly higher rate of speed (70 miles per hour) through a thickly settled neighborhood near the center of town on a holiday afternoon; whereas in *Twombly*, the defendant was traveling at about fifty-five miles per hour on the portion of Route 110 that was at the outskirts of Amesbury and crossed over the Salisbury town line. *Id.* at 441.

passed the defendant, at speeds of sixty-five to seventy miles per hour, crashed, and to conclude that they were racing. That argument was based on the evidence. That the defendant did not object to the argument at trial bolsters the conclusion that the remarks were not error. Moreover, even if the prosecutor's remarks were error, it can be fairly inferred that the error was nonprejudicial given the jury's acquittal of the defendant on the charge to which the remarks were directed.

*Judgment affirmed.*

*Steven Reilly* for the defendant.

*David B. Mark,* Assistant District Attorney, for the Commonwealth.