The defendant appeals from his conviction, after a jury trial, of negligent operation of a motor vehicle, G. L. c. 90, § 24(2)(a ).[2] He claims the evidence was insufficient to support the conviction.[3] After considering the evidence and the reasonable inferences to be drawn from it in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), we affirm.
Background. On the afternoon of September 6, 2013, the defendant was driving three schoolmates home from school in his Mazda sport utility vehicle (SUV). The defendant drove westbound on the Casey Overpass, a part of the Arborway in the Jamaica Plain section of Boston that is four lanes wide with a concrete barrier dividing the two eastbound lanes from the two westbound lanes. That day, one of the westbound lanes was closed for construction and the remaining westbound lane was "in terrible disrepair" with "a lot of potholes."
Monica Thomas was driving her Lexus in the open westbound lane, proceeding "very slowly" in order to avoid the potholes, when the defendant pulled up "very close" to her rear bumper, making her "anxious." After Thomas crossed the overpass, traveling in the left lane and with no cars in front of her, she sped up to thirty or thirty-five miles per hour, in order to create distance between her vehicle and the defendant's SUV.
Thomas then saw in her rear-view mirror that the defendant's SUV, still behind her in the left lane, had its right "blinker" on. Next, Thomas heard, from behind her, "screeching sounds getting progressively closer to [her]. And louder." She looked in her rearview mirror and saw nothing, but as she glanced to her right, she saw the defendant's SUV coming towards her, "sort of on two wheels." She immediately stepped on her brakes; she then saw the defendant's SUV cross from the right lane into the left lane, approximately five feet in front of her Lexus, and then hit the median, become airborne, and go over the median. The defendant's SUV then collided head-on with an oncoming vehicle (the pickup truck). Thomas saw "two bodies fly out of" the SUV.
Just before the accident, the front seat passenger in the pickup truck[4] saw two vehicles traveling in the westbound lanes. The defendant's SUV was in the right lane, either behind or beside the other vehicle. The defendant's SUV "swerve[d] one way, swerve[d] back the other, [and] cut in front of [the] vehicle that was in the left-hand lane." The passenger in the pickup truck heard screeching sounds from the tires of the defendant's SUV and saw it cross over the median and collide with the vehicle in which the passenger was riding.
Trooper Pereira, the Commonwealth's collision reconstruction analyst, examined tire markings and other evidence at the scene. He determined that the defendant's SUV, while on the westbound portion of the Arborway, had "turn[ed] right" in an "evasive action," then turned left and went back into the left lane, hit and crossed over the median, "roll[ed] over on the roadway," and collided with the pickup truck. The trooper calculated that the defendant was driving at a speed of fifty-one miles per hour at the time he lost control. The posted speed limit for the westbound portion of the overpass was thirty miles per hour. A postaccident analysis revealed no defects in the SUV's acceleration, speed control or throttle cables, or braking systems.
Discussion. A conviction of negligent operation of a motor vehicle requires the Commonwealth to "prove that the defendant (1) operated a motor vehicle (2) upon a public way (3) negligently so that the lives or safety of the public might be endangered." Commonwealth v. Ross, 92 Mass. App. Ct. 377, 379 (2017). The defendant challenges the sufficiency of the evidence only on the issue of his negligence.
The defendant first claims that the evidence that he drove at a negligent speed was "uncertain at best." He points to Thomas's testimony that the defendant drove behind her and that she drove no more than thirty to thirty-five miles per hour while leaving the overpass; and to the testimony of one of the passengers in the defendant's SUV that the defendant was driving at a "moderate" rate of speed. But the jury were entitled to credit Thomas's testimony to the effect that the defendant, after using his turn signal to indicate a lane change, passed her on the right-necessarily driving faster than she was-as well as the trooper's testimony that the defendant was driving fifty-one miles per hour.
The defendant further suggests that the mere occurrence of the collision does not prove he drove negligently. He points to Trooper Pereira's testimony about tire tracks left in the area by an unidentified third vehicle, driving at approximately seventy-eight miles per hour, that the trooper "[i]nitially" thought might have played a role in the accident.[5] The defendant argues that his "evasive action" could have been a reasonable attempt to avoid the danger posed by that vehicle. But there was no evidence as to when those tire tracks were made, and numerous witnesses testified that they noticed only two vehicles (the defendant's and Thomas's) in the westbound lanes immediately before the accident. The jury were not required to believe that any third vehicle played a role.[6]
The Commonwealth presented ample evidence from which the jury could find beyond a reasonable doubt that the defendant operated his SUV negligently. The jury could have found that the defendant tailgated Thomas's vehicle as they traveled on the one open lane on the overpass; that, once the roadway widened to two lanes, he signaled a lane change and then swerved into the right lane and accelerated to fifty-one miles per hour, tires squealing, in an attempt to pass her; and that then, whether purposefully or due to a loss of control, he swerved back into the left lane, up on two wheels, passing only five feet in front of Thomas, hit and crossed over the median, rolled over, and then collided with the pickup truck. The jury could find that some of these acts alone, and certainly all of them in combination, constituted negligent operation.
This is not a case where driving in excess of the speed limit is the only evidence of negligence. See Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 922 (2004) (speeding alone "does not mandate ... a finding" of negligent operation of a motor vehicle, but it may be considered in combination with other factors as evidence of same). Nor is this a case like Aucella v. Commonwealth, 406 Mass. 415 (1990), in which the mere occurrence of a collision, "where the circumstances immediately preceding it are left to conjecture, [was] not sufficient to prove negligence on the part of the operator of the vehicle." Id. at 418 (quotation omitted).
Conclusion. The evidence was sufficient for the jury to find the defendant guilty, beyond a reasonable doubt, of negligent operation of a motor vehicle.
Judgment affirmed.

The defendant was also found responsible by the trial judge for a marked lanes violation, two counts of failure to wear a seat belt, and speeding.

The defendant's direct appeal was consolidated with his appeal from an order by a single justice of this court denying his motion to stay execution of the terms of his probation pending appeal. Prior to oral argument, the defendant withdrew all claims on appeal except the sufficiency claim.

The driver of the pickup truck suffered a brain injury in the collision and did not testify. Pursuant to the judge's ruling on the defendant's motion in limine, no evidence of the injuries suffered by any individual involved in the accident, including the driver of the pickup truck and the two passengers ejected from the defendant's SUV, was introduced at trial.

The jury could infer that Trooper Pereira later changed his view, but he was not asked whether or why he did so.

Nor were the jury required to accept the defendant's theory, advanced in closing argument, that the tire tracks were left by Thomas's vehicle and that it was her dangerous driving the defendant was reasonably attempting to avoid. We also note that the judge, at the defendant's request, twice instructed the jury that in determining whether the defendant was negligent, they could consider whether the defendant faced a sudden emergency that required a rapid decision, and, if so, whether the Commonwealth had proven beyond a reasonable doubt that he failed to act as a reasonable person would under similar emergency circumstances.