Following a jury trial in the District Court, the defendant was convicted of negligent operation of a motor vehicle.[2] On appeal, the defendant contends that (1) the evidence was insufficient to show she operated her vehicle negligently; (2) testimony regarding a lost "nip" bottle should have been excluded; and (3) the prosecutor improperly vouched for a police witness in closing argument. We conclude that the Commonwealth introduced sufficient evidence to sustain the conviction and that the error, if any, in the admission of testimony regarding the lost evidence or the prosecutor's closing does not warrant relief.
Background. The jury could have found the following facts. At approximately 1:45 A . M . on March 17, 2017, a State police trooper was dispatched to the area on Interstate 91 before Exit 18 in Northampton, where a car was reported to have gone off the road and onto the median. The trooper testified that the roadway was "completely dry," but as he approached Exit 18 northbound, he saw tire marks in the snow that were still on the grass in the median. At the end of the approximately fifty yards of northward tracks, the trooper observed a gray Toyota Yaris sedan on the median, at the bottom of an embankment.
The trooper immediately requested a tow truck, parked his cruiser in the left high-speed lane of the two-lane northbound section of the Interstate, and activated his emergency rear-flashing lights to warn northbound traffic. The trooper then walked down the hill to the Toyota Yaris and observed one woman in the driver's seat, who was later identified as the defendant. When the trooper, who was in full uniform, reached the passenger-side front window and knocked, the defendant glanced at him and then returned her attention to the steering wheel; she tried to start the vehicle, which was already running, and steer the stationary vehicle out of the ditch. Clothing and bags were strewn about inside the vehicle "consistent with a crash." The trooper noticed the defendant's eyes were glassy and bloodshot and when he opened the passenger door he immediately smelled a strong odor of alcohol. The defendant said "she must have spun out on some black ice and she was waiting for a friend" to help her. Her speech was slurred and "thick-tongued" making it difficult for the trooper to understand her. The defendant said she was driving home from work at the Mardi Gras II in East Windsor, Connecticut, an establishment the trooper believed served alcohol.
The trooper had the defendant recite a portion of the alphabet, which she did successfully albeit with slow and slurred speech. The defendant was not able to complete the trooper's request to count backwards. The trooper then had the defendant step from the vehicle and walk up the hill to the front of his cruiser to assess her sobriety. Her trek to the roadway revealed a lack of coordination and unsteadiness. At the roadway, when the defendant was standing next to the trooper, the trooper could smell alcohol coming from the defendant's mouth. The trooper administered three field sobriety assessments, none of which the defendant was able to successfully complete. The trooper formed the opinion that the defendant was under the influence of alcohol and placed her under arrest.
During the search incident to arrest, the trooper found an empty nip bottle of Captain Morgan's rum in the defendant's coat pocket but left it there and zipped the pocket closed because he did not want to risk further agitating the defendant, who had become increasingly upset during the encounter as they stood in the high-speed lane on Interstate 91. The defendant was transported to the police station and a tow truck removed her vehicle, which had some damage to the front end and to one of the side mirrors. At the station, the nip bottle was no longer in the defendant's coat. The trooper checked the path from the station to his cruiser, his cruiser's interior, and he even went back to the scene and walked the area, but never located the bottle.
The defense called an expert witness who gave an opinion that the defendant suffered from Attention Deficit and Hyperactivity Disorder (ADHD) and that her inability to focus or to complete the sobriety tests was consistent with behavior associated with ADHD. The defendant testified that she lived in Greenfield, had had little sleep in the past twenty-four hours, and that as she drove home from work she hit a patch of black ice. She said she had been traveling at seventy miles per hour. Her vehicle had passed other vehicles on the road and some vehicles had passed her. She denied drinking alcohol and said the bottle in her pocket was a Pirate Energy drink.
Discussion. 1. Sufficiency of the evidence. The defendant contends that the judge erred in denying her motions for a required finding of not guilty because there was insufficient evidence to support her conviction. When reviewing a denial of a motion for a required finding of not guilty, we assess the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). To convict a defendant of negligent operation of a motor vehicle under G. L. c. 90, § 24 (2) (a ), "the Commonwealth must prove that the defendant (1) operated a motor vehicle (2) upon a public way (3) negligently so that the lives or safety of the public might be endangered." Commonwealth v. Ross, 92 Mass. App. Ct. 377, 379 (2017). Here, the defendant challenges only the third element, contending that the Commonwealth failed to prove that she operated a motor vehicle in a negligent manner.[3] We disagree.
There is no question that the "mere happening of an accident ..., where the circumstances immediately preceding it are left to conjecture is not sufficient to prove negligence on the part of the operator of the vehicle." Aucella v. Commonwealth, 406 Mass. 415, 418-420 (1990), quoting Callahan v. Lach, 338 Mass. 233, 235 (1958). In this case, however, the evidence does not leave the circumstances preceding the accident to conjecture. Rather, viewing the evidence in the light most favorable to the Commonwealth, it shows that the defendant lost control of her vehicle on a dry roadway and careened across the median of an Interstate, damaging the front end and a mirror on the vehicle before coming to rest in a ditch. In addition, the defendant's speech was slurred, her eyes were red and bloodshot, her movements lacked coordination, she could not complete a variety of field sobriety assessments, and she smelled of alcohol.
The defendant concedes that "[t]he fact that the jury ultimately did not convict [her] of OUI does not preclude their consideration of the evidence of intoxication in considering the negligent operation charge." Ross, 92 Mass. App. Ct. at 380. She nevertheless contends that "in this case ... the evidence of intoxication was not sufficient to overcome the lack of any other evidence of driving to endanger." To the contrary, the record includes ample evidence of the defendant's intoxicated state. This is not, as the defendant characterizes it, a case wherein the evidence of her inability to perform the field sobriety tests and the trooper's testimony regarding the nip bottle stand alone as the only evidence of her intoxication. Indeed, in these circumstances, when the accident on a dry roadway is considered "in light of the evidence of the defendant's intoxication, a reasonable jury could conclude that [s]he acted negligently." Id. at 380-381. See Commonwealth v. Daley, 66 Mass. App. Ct. 254, 256 (2006).
And the case did not deteriorate after the Commonwealth rested. See, e.g., Ross, 92 Mass. App. Ct. at 381. The defendant's testimony suggested she was exhausted and that she may have been speeding. Those factors, in addition to having been under the influence of alcohol, only enhanced the conclusion that she had been operating her vehicle "negligently so that the lives or safety of the public might be endangered." G. L. c. 90, § 24 (2) (a ).
Further, although the defendant makes much of the absence of a collision or near collision, "[t]he statute only requires proof that the defendant's conduct might have endangered the safety of the public, not that it in fact did." Commonwealth v. Ferreira, 70 Mass. App. Ct. 32, 35 (2007), citing Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 923 (2004). See Commonwealth v. Constantino, 443 Mass. 521, 526-527 (2005) ("a person may operate a vehicle in such a way that would endanger the public although no other person is on the street"). The defendant drove her vehicle off a familiar interstate highway frequented by other drivers, onto the median between the north and southbound lanes. The vehicle traveled approximately fifty yards off of the roadway, and spun around before coming to rest. The evidence of the defendant's behavior, when viewed in relation to these attendant circumstances, was sufficient to prove that her conduct might have endangered the lives of the public. See Duffy, supra at 922-923.
2. Lost or destroyed evidence. The defendant claims that the trial judge erred in denying her motion in limine to preclude evidence of the nip bottle of alcohol (which she contended was an energy drink) on the basis that the Commonwealth had failed to preserve potentially exculpatory evidence. "In reviewing the denial of a motion based on the Commonwealth's loss [or destruction] of allegedly exculpatory evidence, we do not disturb the judge's decision absent a clear abuse of discretion." Commonwealth v. Kee, 449 Mass. 550, 554 (2007). The judge did not make explicit findings concerning the relevant factors. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 555 (once defendant establishes that lost evidence is potentially exculpatory, court must balance culpability of Commonwealth, materiality of evidence, and potential prejudice to defendant in order to fashion appropriate remedy). He did, however, agree to give an instruction to the jury, pursuant to Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980), to allow the jury to consider the negligence of the police in losing the evidence as it impacted the quality, reliability, and credibility of the evidence presented by the Commonwealth. Although the defendant sought exclusion of any testimony concerning the alleged nip bottle, a Bowden instruction was among the many remedies that could be fashioned upon a finding that the government was responsible for the loss of relevant evidence. See Commonwealth v. Williams, 455 Mass. 706, 719 (2010). The judge did not abuse his discretion.[4]
3. Closing argument. Lastly, the defendant challenges the prosecutor's closing argument, asserting that the prosecutor improperly vouched for the credibility of the police witness when she said, "I would argue that his testimony was honest and credible." Like use of phrases that include "submit" and "suggest," the use of the rhetorical term "argue" makes clear the prosecutor's statement did not constitute an impermissible expression of personal belief. See Commonwealth v. Silva, 401 Mass. 318, 329 (1987). Additionally, the judge specifically instructed the jury that "[t]he attorneys are not permitted to express their personal beliefs in the credibility or lack of credibility of any witness who testified in this case. That determination is entirely for you to make. If a lawyer makes such a comment, you should disregard that comment." Nothing in the record here indicates that the jury did not follow the judge's instructions. See Commonwealth v. Maynard, 436 Mass. 558, 571 (2002).
Judgment affirmed.

The defendant was acquitted of operating a motor vehicle while under the influence of alcohol.

The parties stipulated that the defendant was the operator of the vehicle and that it was operating on a public way.

We note that the jury acquitted the defendant of operating a motor vehicle while under the influence of alcohol, the charge to which the nip bottle was most directly related.