NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-929

COMMONWEALTH

vs.

RENAND SALVANT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Boston Municipal Court, the defendant was convicted of negligent operation of a motor vehicle in violation of G. L. c. 90, § 24 (2) (a). On appeal, the defendant challenges the sufficiency of the evidence and claims that the trial judge committed several errors in the admission of certain trial testimony, in denying his motion for a mistrial, and in failing to properly analyze his Batson-Soares challenge. We affirm.

Factual Background. We summarize the facts based upon the trial evidence, with certain details reserved for subsequent discussion of the legal issues. On February 6, 2021, at around 4:40 P.M., the defendant rear-ended another vehicle as he

approached a red light at the intersection of Gallivan Boulevard and Washington Street.  The traffic was heavy and there were many vehicles on the streets because it was rush hour.  It is undisputed that, while the parties had different versions of the cause of the crash, the defendant attempted to maneuver his car to the right travel lane to move out from behind a car that was slowing down for the red light.  In doing so, the front of the defendant's vehicle collided with the rear-end of another vehicle.  The impact was severe enough to cause the defendant's airbags to deploy and cause significant damage to the other vehicle.

State police Trooper Brendon Murphy was on his way home from a detail when he observed the crash scene.  He stopped and took over the investigation from several Boston Police Department officers who had arrived shortly before Trooper Murphy.  Trooper Murphy observed several signs of possible impairment:  the defendant's eyes were glassy, his speech was slurred, he repeated himself several times, and he smelled of alcohol.  Trooper Murphy asked the defendant if he had been drinking, to which the defendant responded "no."  Trooper Murphy formed the suspicion that the defendant was impaired and conducted roadside assessments of his sobriety.  Trooper Matthew Wabrek arrived on the scene to assist Trooper Murphy and observed some of the assessments.  At the conclusion of those

2

assessments, Trooper Wabrek placed the defendant under arrest for operating a motor vehicle under the influence of alcohol, in violation of G. L. c. 90, § 24 (1) (a) (1), and negligent operation of a motor vehicle, in violation of G. L. c. 90, § 24 (2) (a).[1]  A jury acquitted the defendant of the charge of operating a motor vehicle under the influence of alcohol and convicted the defendant of the charge of negligent operation of a motor vehicle.  This appeal followed.

Discussion.  1.  Sufficiency of the evidence.  We evaluate the sufficiency of the Commonwealth's evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth." Commonwealth v. Watson, 487 Mass. 156, 162 (2021), quoting Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).

---

[1] Trooper Wabrek also testified at trial that the defendant smelled of alcohol, and while in the police cruiser, the defendant threatened to punch Trooper Wabrek in the face, and upon arrival to the barracks the defendant used profanities and refused to get out of the cruiser.  Once extricated from the back of the cruiser, the defendant refused to answer booking questions.

3

At the close of the evidence, the defendant moved for a required finding of not guilty. On appeal, the defendant claims that the judge erred in denying the motion because there was insufficient evidence to convict him of negligent operation of motor vehicle. The elements of negligent operation of a motor vehicle under G. L. c. 90, § 24 (2) (a), are that the defendant (1) operated a motor vehicle, (2) upon a public way, and (3) did so negligently so that the lives or safety of the public might be endangered. See Commonwealth v. Teixeira, 95 Mass. App. Ct. 367, 369 (2019); Commonwealth v. Ross, 92 Mass. App. Ct. 377, 379 (2017). The defendant does not challenge the first two elements, instead focusing his argument on the claim that the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that he operated the vehicle in a negligent manner. "Negligence in this context is determined by the same standard that is employed in tort law." Teixeira, 95 Mass. App. Ct. at 369, quoting Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 922 n.2 (2004). "The statute requires proof that the defendant's conduct might have endangered the safety of the public, not that it, in fact, did." Commonwealth v. Tsonis, 96 Mass. App. Ct. 214, 220 (2019), quoting Teixeira, 95 Mass. App. Ct. at 369. Moreover, as recently noted in Commonwealth v. Howe, 103 Mass. App. Ct. 354 (2023), negligent operation can be found when a person "operate[s] a vehicle in such a way that

4

would endanger the public although no other person is on the street."  Id., quoting Commonwealth v. Constantino, 443 Mass. 521, 526-527 (2005).  The fact that an accident occurred does not automatically give rise to a finding of negligence because "[t]he mere happening of an accident . . ., where the circumstances immediately preceding it are left to conjecture, is not sufficient to prove negligence on the part of the operator of the vehicle."  Howe, supra at 358, quoting Aucella v. Commonwealth, 406 Mass. 415, 418 (1990).

The Commonwealth presented ample evidence other than just the collision from which the jury could find beyond a reasonable doubt that the defendant operated his motor vehicle in a negligent manner.  The defendant rear-ended a motor vehicle that was stopped at a red light.  The jury heard evidence that, during rush hour, in the city of Boston, at a busy intersection, the defendant changed lanes to avoid a slower car approaching the stop light.  In so doing, the defendant crashed his vehicle into another car with such force that the defendant's airbags deployed and caused significant damage to the other vehicle. Moreover, the jury heard evidence that the defendant smelled of alcohol, his eyes were glassy, his speech slurred, he was unable to successfully perform road assessment tests, and his demeanor was hostile and belligerent.  The evidence of the crash in combination with the manner in which he drove his car, the

5

severity of the collision, and the evidence of alcohol consumption was more than sufficient to convict the defendant of negligent operation of a motor vehicle.

2. Peremptory challenge of juror no. 27. We next address the defendant's claim that the Commonwealth's peremptory strike of juror no. 27 was an unconstitutional race-based challenge and the judge committed error in failing to make a contemporaneous ruling. During jury selection, juror no. 27 approached sidebar and stated that sometime between 2020 and 2022 she was involved in a motor vehicle accident and was criminally charged. Juror no. 27 also told the trial judge that she had appeared before him on one occasion while her criminal case was pending and that she was eventually placed on probation, required to pay a fine, and ordered to attend AA meetings. Based upon this exchange, the prosecutor challenged juror no. 27 for cause, arguing that, because she had been recently charged with a similar crime, juror no. 27 would be sympathetic to the defendant and not impartial. The judge denied the for-cause challenge, indicating that juror no. 27 responded that she could be a fair and impartial juror. The prosecutor then exercised her last peremptory challenge on this juror.

Defense counsel challenged the prosecutor's exercise of her peremptory challenge by stating, in relevant part, "[y]oung minority female trying to sit on the jury." The judge denied

6

defense counsel's challenge at that point and did not allow further argument on the issue.  At sidebar, outside of the hearing of the potential jurors, defense counsel insisted that the judge had to record why his challenge was denied.  The judge responded "[b]ased on the juror's answers that were given forth with a much detailed question and answer regarding her past and her history."  Jury selection continued and three more jurors (jurors no. 28, 29, and 31) were selected.  The jurors were sworn in, and then released for the lunch break.  When the jurors had departed the courtroom, defense counsel requested to be heard on the record and stated:

> I did make a Batson-Soares challenge on juror number 27, Your Honor.  There was no actual argument as to that.  I know my request was denied but we did not go through the steps on that, Your Honor, and I believe that there is a [Batson-Soares] issue here.

The judge recessed for lunch and then, prior to the jurors entering the courtroom, addressed the defendant's Batson-Soares challenge.  The judge, believing that the defendant had presented a prima facie case, asked the prosecutor to provide her race-neutral reason for exercising a peremptory challenge. The judge then heard from defense counsel and found that the explanation by the prosecutor was both "adequate" and "genuine" and allowed the peremptory challenge of juror no. 27.

We review a judge's decision regarding a peremptory challenge for an abuse of discretion. Commonwealth v. Jackson,

7

486 Mass. 763, 768 (2021). "We grant deference to a judge's ruling on whether a permissible ground for the peremptory challenge has been shown and will not disturb it so long as it is supported by the record." Commonwealth v. Rosa-Roman, 485 Mass. 617, 636 (2020), quoting Commonwealth v. Rodriguez, 431 Mass. 804, 811 (2000).

In a criminal trial, a defendant is entitled to a trial by an impartial jury and neither party may exercise a peremptory challenge on the basis of race or other protected classes. See Commonwealth v. Sanchez, 485 Mass. 491, 493 (2020). If there is an objection to a peremptory challenge, the trial judge must follow a three-step, burden shifting analysis. Commonwealth v. Jackson, 486 Mass. at 768. "[T]o rebut the presumption that the peremptory challenge is proper, the challenging party 'must make out a prima facie case' that it was impermissibly based on race or other protected status 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" Commonwealth v. Kozubal, 488 Mass. 575, 580 (2021), quoting Jackson, supra. Because establishing a prima facie case of impropriety "is not an onerous task," Commonwealth v. Jones, 477 Mass. 307, 321 (2017), we have urged judges that they should "think long and hard before they decide to require no explanation from the prosecutor for the challenge and make no findings of fact." Sanchez, 485 Mass. at 514, quoting

8

Commonwealth v. Issa, 466 Mass. 1, 11 n.14 (2013). If the prima facie case has been established, "the burden shifts to the party exercising the challenge to provide a group-neutral explanation for it." Sanchez, supra at 493. Finally, the judge must determine whether the proffered explanation is both adequate and genuine. Id. An explanation is considered adequate if it is "clear and reasonably specific" and "personal to the juror and not based on the juror's group affiliation." Jackson, supra at 779, quoting Commonwealth v. Maldonado, 439 Mass. 460, 464-465 (2003). "An explanation is genuine if it is in fact the reason for the exercise of the challenge." Jackson, supra.

The case of Commonwealth v. Jackson, 486 Mass. 763 (2020) is instructive. In Jackson, defense counsel objected to the prosecutor's peremptory challenge by stating "I make a Soares challenge. Person of color." Id. at 771. Ultimately, the Supreme Judicial Court found that the judge did not abuse his discretion in determining that the defendant failed to carry the "step-one" burden of production under Batson-Soares. The Court took note that, where "defense counsel [is] unfocused in his objection, . . . [s]uch diffuse objections, presented without specific factual bases for each protected category, make the already difficult Batson-Soares analysis many times more complicated to sort out." Id. at 772. The Court explained that the Batson-Soares test "does not apply to challenges to members

9

of all minority ethnic or racial groups lumped together, but instead applies to challenges to 'particular, defined groupings in the community.'" Id., quoting Commonwealth v. Lopes 478 Mass. 593, 600 n.5 (2018).

We agree with the defendant that, in most circumstances, the Batson-Soares analysis should and is made contemporaneously with the challenge. And we further note that trial judges are "strongly encouraged to ask for an explanation as questions are raised regarding the appropriateness of the challenges." Lopes, 478 Mass. at 598. Here, however, like the unfocused challenge in Jackson, defense counsel made matters more difficult by making the statement "young minority female" and expecting that statement to automatically translate into a Batson-Soares challenge. A short time later, perhaps realizing that he lacked specificity in challenging juror no. 27, defense counsel for the first time articulated the nature of his challenge by specifically noting that his challenge was indeed under Batson-Soares. Once properly raised, and before the jurors returned to the courtroom and the trial started, the judge properly analyzed the defendant's challenge. The judge turned to the prosecutor and asked the prosecutor to provide a race neutral reason for the challenge. The prosecutor's stated reason for exercising a peremptory challenge was her concern that the defendant was charged with operating a motor vehicle under the influence of

10

alcohol and the facts involved a motor vehicle accident --
similar to what juror no. 27 had been charged with, had appeared
before the same trial judge for, and had recently been placed on
probation for. The judge concluded that the prosecutor's reason
for exercising the peremptory challenge was both adequate and
genuine. This conclusion was not an abuse of discretion. See
Lopes, 478 Mass. at 601 (presumption of propriety of peremptory
challenges had not been overcome where a juror's "two
significant experiences with the law provided a sufficient and
obvious basis for the prosecutor's peremptory challenge").
Likewise, we see no abuse of discretion in the judge's
determination that the prosecutor's reasoning was both adequate
and genuine.

3. Evidentiary rulings. The defendant contends that the
judge erred in denying his motion to exclude Trooper Murphy as a
witness and then in denying a voir dire examination of Trooper
Murphy prior to trial. He contends that this error was further
compounded by the judge's failure to grant a mistrial once
Trooper Murphy testified to undisclosed statements by the
defendant and the judge's failure to provide a Bowden
instruction. The defendant also contends that the judge erred
in allowing the civilian witness, whose vehicle was rear-ended
by the defendant, to testify that the damage to his car was a
"total loss" and that, due to the impact of the crash, his

11

child's car seat was broken and split in half. We will address each of these witnesses in turn.

a. Testimony of Trooper Murphy. The Commonwealth notified the defendant during the discovery process that it had three potential trial witnesses: the civilian witness involved in the motor vehicle crash, Trooper Murphy, and Trooper Wabrek. At the beginning of the trial, defense counsel sought to exclude Trooper Murphy from testifying because he had not authored a police report. The defendant argued that since he did not write a report, Trooper Murphy's trial testimony would result in unfair surprise and prejudice to his client. He also requested, if the judge were to deny his motion to exclude Trooper Murphy as a witness, a voir dire examination be allowed before the trial began. In response, the judge asked the prosecutor for an offer of proof. The prosecutor acknowledged that Trooper Wabrek was the only police officer who wrote a report, even though Trooper Murphy was the first to arrive on the scene. The prosecutor stated that he did not expect "any surprises" and that in addition to what was contained in the police report, he anticipated that Trooper Murphy would testify about his observations of the scene including his observations of the vehicles involved in the crash, his observations of the defendant's appearance and demeanor, and the reasons why he asked the defendant to perform roadside assessments. The judge

12

then allowed the Commonwealth to call Trooper Murphy as a witness and denied the defendant's request for a voir dire.

At trial, the prosecutor asked Trooper Murphy to describe his initial observations of the defendant. In addition to testifying about his observations of the defendant's physical appearance and condition, Trooper Murphy stated that the defendant admitted that, prior to the accident, he had consumed alcohol at a family party or family cookout.[2] Trooper Murphy also testified that the defendant declined medical treatment when offered by him as well as officers of the Boston Police Department. Defense counsel objected as neither the defendant's statement about alcohol consumption or denying medical treatment was provided in discovery requests, and the defendant moved to strike the testimony.[3]

The judge, after extensive inquiry with the parties and thoughtful consideration, instructed the prosecutor not to inquire any further with Trooper Murphy about the defendant's statement that he had been consuming alcohol. He then allowed Trooper Murphy's testimony to stand except as to the statement

_____

[2] This statement directly conflicted with the defendant's statement memorialized in Trooper Wabrek's police report denying any consumption of alcohol.

[3] Later the defendant renewed his objection and requested a mistrial or, in the alternative, the exclusion of Trooper Murphy's entire testimony.

13

that the defendant admitted to drinking alcohol, which he struck and instructed the jury to disregard.  The judge allowed and even encouraged defense counsel "wide leeway" to cross-examine Trooper Murphy about his failure to properly document important facts.

On the second day of trial, the defendant renewed his objection and requested a mistrial or, in the alternative, the exclusion of Trooper Murphy's entire testimony.  The judge denied the motion to strike Trooper Murphy's entire testimony and reserved ruling on the mistrial until after the jury reached a verdict.  After conducting a hearing, the judge denied the motion for a mistrial.

When a party violates its discovery obligations, the trial judge may issue a sanction.  Mass. R. Crim. P. 14 (c), as appearing in 442 Mass. 1518 (2004).  The Commonwealth readily admits that the "late disclosure" of the defendant's statement about alcohol consumption was a violation of Rule 14.  Sanctions for discovery violations, which are meant to protect a defendant's right to fair trial, are within the judge's sound discretion.  See Commonwealth v. Edwards, 491 Mass. 1, 8 (2022), citing Commonwealth v. Frith, 458 Mass. 434, 439 (2010).  In sanctioning a discovery violation, "the court may make a further order for discovery, grant a continuance, or enter such other order as it deems just under the circumstances."  Mass. R.

14

Crim. P. 14 (c) (1). The court also may exclude evidence for noncompliance with a discovery order.

We review a decision denying a motion for a mistrial also under the abuse of discretion standard. Commonwealth v. Lao, 460 Mass. 12, 19 (2011). "The burden of demonstrating an abuse of discretion is a heavy one." Commonwealth v. Medeiros, 395 Mass. 336, 351 (1985). The trial judge was in the best position to assess any potential prejudice and to tailor an appropriate remedy short of declaring a mistrial, where possible. Although the defendant argues that the prosecutor intentionally elicited the undisclosed statement, the record makes clear that the prosecutor did not foresee or anticipate Trooper Murphy's testimony about the defendant's admission to alcohol consumption. Moreover, while a curative instruction was not immediately given, the defendant did not request one. Here, the trial judge took several steps he deemed adequate to protect the defendant's right to a fair trial. He allowed considerable cross-examination of Trooper Murphy, he prohibited the Commonwealth from eliciting more testimony about the defendant's admission to alcohol consumption, he struck the previously elicited testimony to that effect, and he instructed the jury to disregard it. Further, the defendant's claim that the judge struck the wrong statement is unfounded. The judge spent considerable time with defense counsel to ensure that defense

15

counsel understood the consequences of striking the entire statement by Trooper Murphy. The judge explained that if he struck all of Trooper Murphy's last answer (as requested by defense counsel), then defense counsel would not be allowed to cross-examine him on his failure to properly document the defendant's statements in a written report. The judge then instructed the jury to specifically disregard "that last answer. Disregard that last answer about what [the] defendant said." There was no error. The jury are presumed to follow instructions to disregard a particular matter. See Commonwealth v. Isabelle, 444 Mass. 416, 420 (2005). In fact, given that the jury acquitted the defendant of the more serious charge of operating a motor vehicle under the influence of alcohol, the defendant would be hard pressed to argue otherwise. The defendant has not shown that the judge abused his discretion.[4]

Next, the defendant argues that the judge erred in denying him an opportunity to conduct a voir dire examination of Trooper Murphy outside of the hearing of the jury. "The decision to

---

[4] As to the statement by Trooper Murphy that the defendant declined medical treatment, we note that the defendant testified at trial that he never spoke to Boston Police officers and that Trooper Murphy never offered him medical treatment for his injuries. We fail to see what, if any, prejudice the defendant suffered from Trooper Murphy's statement about medical attention. Further, the reference by Trooper Murphy about the Boston Police officers offering medical attention was, at best, cumulative.

16

conduct a voir dire examination of a witness rests in the sound discretion of the trial judge." Commonwealth v. Troche, 493 Mass. 34, 46 (2023), quoting Commonwealth v. Pina, 481 Mass. 413, 431 (2019).  The judge's decision "will not be disturbed unless it constitutes 'a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives.'"  Pina, supra, quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  We see no abuse of discretion in declining to conduct a voir dire, as the defendant was on notice that Trooper Murphy would be called to testify, the Commonwealth made an offer of proof, and there is no evidence that the prosecutor was aware of the statement of the defendant's admission of alcohol consumption before Trooper Murphy testified at trial.

Finally, the defendant argues that because Trooper Murphy failed to write a report or document pertinent information in Trooper Wabrek's police report, the judge erred by failing to give the so-called Bowden instruction.[5]  There is no error "because the giving of such an instruction is never required." See Commonwealth v. Williams, 439 Mass. 678, 687 (2003) ("judge

---

[5] Commonwealth v. Bowden, 379 Mass. 472, 485 (1980).  Here, in essence, the defendant requested that the jury be instructed that they could consider, if they found that police investigation inadequate, whether that amounted to reasonable doubt of the defendant's guilt.

17

is not required to instruct on the claimed inadequacy of a police investigation). "Bowden simply holds that a judge may not remove the issue from the jury's consideration." Id., quoting Commonwealth v. Boateng, 438 Mass. 498, 506-507 (2003). In this case, by providing defense counsel with wide leeway to cross-examine Trooper Murphy, the judge did not remove the inadequacy of the police investigation from consideration by the jury. We also note that the judge allowed the defendant to mention the failure of the Trooper Murphy to provide these statements to the jury in his closing statement.

b. Testimony of civilian witness. The Commonwealth's first witness at trial was the operator of the vehicle who the defendant rear-ended. This witness testified that he was stopped at the red light at the intersection of Gallivan Boulevard when the defendant hit his car. Specifically, he testified that the car was "a total loss" and cost $12,000.00 to repair. The witness also testified that his child's car seat was broken. The defendant objected, noting that he never received any photographs of the broken car seat or documents indicating that the car was a total loss. The objection was overruled, and the witness testified that the car seat was broken in the middle and not usable.

The defendant's claim that the Commonwealth violated Mass. R. Crim. P. 14 by failing to provide him with statements

18

from a civilian witness about the extent of the damage to his car and to a child's car seat is without merit.  There was no error in the admission of this testimony.  The defendant was aware that the Commonwealth intended to call the civilian witness, and the defendant has not established that the witness made any statements that were withheld in violation of Mass. R. Crim. P. 14.

<u>Judgment affirmed</u>.

By the Court (Desmond,
  Walsh & Toone, JJ.[6]),

Clerk

Entered:  January 6, 2025.

---

[6] The panelists are listed in order of seniority.